Jackson, J.
There can be no doubt as to the intent of the parties in the deed of Peck to Welsh; and we have been very desirous to carry that intention into effect, if possible, without violating the established principles of law. The question is, whether Welsh has, by force of that deed, any estate in the land. This Court has no chancery power in the case ; nor have we considered whether he has a remedy in any other way for the loss and disappointment that he has met with. If he is not now entitled to the land in question, he cannot maintain this action.
There are many difficulties in considering this as a conveyance of the land, in any of the modes suggested in the argument. If it be viewed as a bargain and sale, it may be objected that it is not to the use of the bargainee, until a future contingent event; and, in the mean time, to the use of the bargainor.
[*95] *It was said, that it might be a feoffment to Welsh, to the use of Peck and his heirs, until the contingency happened ; and then to the use of Welsh and his heirs. But the deed, according to the terms of it, is not to take effect, nor to be used in any manner, until the happening of the contingency.
It was also contended, that it might operate as a covenant by Peck, to stand seized to the use of himself and his heirs, until the event should happen ; and then to the use of Welsh and his heirs. To this it was answered, that there is no sufficient consideration for- a covenant to stand seized ; that no consideration but consanguinity or marriage will support a conveyance in that form.
This seems to be the rule now adopted in the English courts; although there is no little confusion on the subject, and many opinions to the contrary.(1) The statute of 27 Hen. 8, c. 16, requires a *89 bargain and sale to be enrolled ; but no such ceremony is required with respect to a covenant to stand seized. Hence it has become necessary, since the statute, to distinguish accurately these two species of conveyances.
Lord Coke, in commenting on this statute, says, that any words in a deed for valuable consideration, which would have raised a use at common law, amount to a bargain and sale within the statute ; and therefore, if a man, by deed indented and enrolled, covenant, for valuable consideration, to stand seized to the use of another, this would be a bargain and sale within the statute.(2) That statute might have been constantly evaded, if the mere form of the instrument had been alone regarded, and if the parties, by using the words, “ covenant to stand seized,” instead of “ bargain and sell,” had been exempted from the necessity of enrolling the instrument. It is not improbable that, when a covenant- to stand seized is said to be good, although made for a valuable consideration only, the reporter understands an instrument for conveying a present interest or estate in that form, but which has been duly enrolled ; in which case it would * in fact operate as a bargain and sale ; or, in the [ * 96 J older cases, they may perhaps refer to the rules of the common law before the statute of enrolments ; and thus the contradictory opinions may be reconciled.
The object of that statute is, that a sale of land, that is, a conveyance of land for a valuable consideration, which would be good against creditors and purchasers, should be enrolled, in order to give it notoriety, and to prevent frauds on other persons. And such a sale, from the nature of the transaction, passes a present interest to the bargainee. But a covenant, to stand seized, may be upon certain good considerations merely, and resembles a last will; being a settlement of a man’s estate among bis family or relations. There being no present valuable consideration to the owner of the land, there is othing repugnant in his continuing to hold it after the execution of the deed ; and, of course, the freehold may, by this mode of conveyance, pass and vest in futuro.† Such a conveyance being void as against creditors, and subsequent bona fide purchasers, there was no occasion to require it to be enrolled for their security or protection.
The principle, then, seems to be, that a man may convey his land by a covenant to stand seized thereof to the use of another, either for certain good considerations, or for a valuable consideration ; but in the latter case the conveyance, being in effect a bargain and sale, must have all the other requisites and qualities of a bargain and sale. One of these qualities is, that it must be to the use of the bargainee, *90 and that another use cannot be limited on that use ; from which it follows, that a freehold, to commence in futuro, cannot be conveyed in this mode ; as that would be to make the bargainee hold to the use of another, until the future freehold should vest.
The statute of 27 Henry 8, has never been adopted here ; but our laws require that all conveyances of lands shall be acknowledged by the grantor, and recorded -in the registry of deeds for the county where the lands lie ; otherwise they have no effect, except against the grantors and their heirs.
[*97] *We have not, however, found it necessary to decide whether this instrument could operate as a covenant to stand seized ; as there is a conclusive objection, which applies to it, in whatever light it may be viewed. The estate intended to be conveyed to Welsh was not to take effect, or be vested, “ until the millpond should cease to be used for the “ purpose of carrying any two mill-wheels.” It is apparent that this event, if it should ever happen, might be delayed much beyond the utmost period allowed for the vesting of estates on a future contingency. The rule as to springing and shifting uses is the same which is uniformly applied to executory devises ; and the reason of the rule applies equally to all of them, namely, to prevent the creating of perpetuities or unalienable estates. The event must, in its original limitation, be such that it must either take place, or become impossible to take place, within the space of one or more lives in being, and a little more than twenty-one years afterwards.
In the case at bar, upon any construction that can be given, consistently with the manifest intent of the parties, it was to create an estate in fee in Peck, so long as the mill-pond should continue to be used for those purposes, whether that should be a few years, or as many centuries ; and afterwards a like estate in Welsh.
It is no answer, to say, that the event which was to vest the estate in Welsh might happen, or that it has happened, in a shorter time than what is often allowed under the rule of law before mentioned. It should be such as must happen within such a period. The rights of Welsh must be decided by the deed itself, and the state of facts, as they existed at the time when that deed was made. If we could • say that he then acquired a right to the land, to be enjoyed on the happening of the event contemplated, there is nothing to prevent the vesting of the estate according to the deed, although the event should not have happened for a century to come.
[*98] * According to the agreement of the parties, the plaintiff is to become nonsuit, and the defendants are to have judgment for their costs.

Plaintiff nonsuit.

 Vin. Abr., Tit. Uses, K., pl. 12. —2 Ves. 255.-7 Co. 133.— Cro. Eliz. 394. 2 Rol. Abr. 734.

 2 Inst. 672.

 Wallis vs. Wallis, 4 Mass. Rep. 135 — Pray vs. Pierce, 7 Mass. Rep. 384.