The opinion of the Court was drawn up by
Walton, J.
In modern practice the proceedings for the recovery of land are very much simplified. Any estate of freehold, in fee simple, fee tail, for life, or any term of years, may be recovered by a writ of entry. R. S., c. 104, § !•
To a good declaration in a writ of entry four things are necessary: — 1. The premises demanded must be clearly described. 2. The estate which the demandant claims in the premises must be stated, whether it be a fee simple, a fee tail, for life, or for years; and, if for life, then whether for his own life or that of another. 3. An allegation that the demandant was seized of the estate claimed within twenty years; and, 4. A disseizin by the tenant.
In general the action must be against a person claiming • an estate not less than a freehold; but if the person in possession has actually ousted the demandant, or withheld the possession, he may, at the demandant’s election, be considered a disseizor for the purpose of trying the right, though he claims an estate less than a freehold.
If the tenant would defeat the action on the ground that he was not tenant of the freehold, and had not actually ousted the demandant, or withheld the possession, he must plead non-tenure in abatement. He cannot avail himself of such a defence under the general issue. Under the latter plea, if the demandant proves that he is entitled to such an estate in the premises as he has alleged, and had a right of *144 entry therein when he commenced his action, he. will be entitled to recover, unless the tenant 'proves a better title in himself. Proof of a better title in some third party, even if the tenant holds under such third party, will be no defence under the general issue; the tenant must prove that he has a better title in himself.
Being in possession, and possession being prima facie evidence of title, the tenant will be entitled 'to prevail, unless the demandant, taking upon himself the burden of proof, introduces evidence sufficient to overcome this jprima facie evidence of title in the tenant, and shows that, as against the demandant, (not as against some third person,) the tenant’s jaossession is wrongful. The real struggle, therefore, under the general issue in a real action, is to see which party can show the better title in himself.
In the suit now under consideration, the demandant- claims title to a lot of land in Palmyra, in the county of Somerset, supposed to contain one hundred acres; or, if not entitled to the whole lot, then he claims title to ten acres of it, on which the buildings stand. The action is against four defendants. One has been defaulted, and the other three have jointly pleaded the general issue, which is joined by the demandant. The question to be determined therefore is, whether the three defendants who have thus pleaded, or the demandant, has the better title. Both parties claim to have derived their titles from Warren M. Brown; and it appears in evidence, and is not denied by either party, that he was once the undisputed owner of the demanded premises.
We will first consider the demandant’s title to the whole lot.
It appears in evidence that on the 7th of April, 1847, Warren M. Brown, being then in possession of the premises, conveyed them in mortgage to Samuel Shaw, and after-wards during the same year, gave a quitclaim deed of the same to Levi J. Merrick; and that Merrick afterwards conveyed his interest to Shaw. The legal estate and the equity of redemption being thus united in Shaw, he afterwards, on *145 tbe 31st of August, 1861, conveyed the same to the demandant. It is not denied that these deeds were properly executed, and seasonably recorded. The prima facie evidence of title in the tenants arising from the mere fact of possession, is thus overcome 'by evidence of a superior title in the demandant.
Elvira D. Leathers, one of the tenants, then undertakes to show that she is the sole owner of the premises, and traces her title to a conveyance from Warren M. Brown, older than the ones under which the demandant claims. But will evidence of such a title maintain the issue on the part of the defendants ? Will the joint plea of nul disseizin by three be maintained by proof of title in one, and that the other two held under her? If so, then two defendants make a successful defence under the general issue by proof of non-tenure; a defence which the law allows to be made only under a plea in abatement. Having neglected to put in proper pleas seasonably, can they now avail themselves of the defence of non-tenure by joining with the other defendant in a plea of nul disseizin9 We think not. Such a defence under the general issue is in direct contravention of the express provisions of law.
The regular course was for Brown and Daniel R. Leathers to have pleaded non-tenure, and for Elvira D. Leathers to have pleaded sole or entire tenancy. She should have averred in her plea, that she was sole tenant of the freehold, and that the other defendants had nothing therein, and that she did not disseize the demandant, &c. Stearns on Real Actions, (2ded.,) 184; Story’s Plead., 382, 384. And it may well be doubted whether a joint plea of nul disseizin by three, can be supported as to either, by proof of anything short of a joint tenancy, or a tenancy in common, by the three.
But we do not find it necessary to decide this question, for we are satisfied that the demandant is entitled to recover upon other grounds. We think the demandant’s title is that of a bona fide purchaser for value, and that the defendants’ *146 title is tainted with fraud, which, as against creditors and bona fide purchasers, renders it void.
In examining these titles we do not find it necessary to determine whether the moi’tgage from Brown to Hilton, of Nov. 4, 1841, was valid or not; for there seems to be no doubt that the debt to secure which it was given, if such a debt ever existed, has been canceled, and all rights under the mortgage extinguished. Such would be the effect of the subsequent transaction between the parties independent of payment; but we think there is no doubt that the debt has been actually paid by Brown.
Conceding that this mortgage was made to secure a bona fide debt of $125, the inquiry naturally arises, why was the security changed ? Why did Hilton surrender his security by mortgage and take an absolute warranty deed of the premises ?
In several States the giving of an absolute deed as security for a debt, is regarded as conclusive evidence of fraud. Such a deed does not speak the truth, — it is deceptive. It purports on its face to convey an absolute title, while in fact it is intended to give security only. It conceals from creditors the fact that the grantor has a remaining interest in the land, which may be attached. It conceals the amount which a creditor would have to pay to redeem the estate. It does not in any respect represent the transaction truly; and such deeds are so well calculated to deceive, mislead and defraud creditors, that the rule, that they are per se fraudulent, is not without strong arguments to support it.
"What fair and proper motive,” says Richardson, C. J., in Winkley v. Hill, 9 N. H., 31, "can any man who is in debt, have to adopt a mode of conveyance that carries falsehood on the face of it, while truth lies hid and concealed beneath?” And, he says further, that "it is because such trusts are calculated to deceive and embarrass creditors, because they are not things to which honest debtors can have occasion to resort in sales of their property, and because they are the means which dishonest debtors commonly and *147 ordinarily use to cheat their creditors, that the law does not permit a debtor to say that he used them for an honest purpose in any case.” See also Cooledge v. Melvin, 42 N. H., 510, where the subject is elaborately considered, and numerous authorities to the same point cited.
In this State the courts have not gone quite so far, and such transactions are not regarded as fraudulent per se, nor as conclusive evidence of fraud. But, when an absolute conveyance, by an insolvent person, is made to secure a debt in amount very much less than the value of the property, and the grantor is permitted to remain in possession, and to treat the property in all respects as his own, we hold that these circumstances are prima facie evidence of fraud: and prima facie evidence, unless satisfactorily explained, becomes conclusive. Clark v. French, 23 Maine, 228 — 30.
The consideration for the warranty deed from Brown to Hilton was only $220, less than half the value of the land. In fact one witness says it was worth at that time $1000. There was no change of possession. Brown continued to occupy as before, and there is no evidence that he ever paid or agreed to pay any rent, or that Hilton ever claimed any. Brown was insolvent. His creditors were pressing him. While the title thus remained in Hilton, Brown was twice compelled to disclose as a poor debtor. The premises were afterwards conveyed by-Hilton to Brown’s wife. Hilton put his warranty deed on record, thus proclaiming to the world that he was the absolute owner of the property, and, at the same time, gave Brown a writing, not under seal, promising to reconvey to him upon payment of $220 and| interest. This writing proves that Hilton was not the absolute owner of the farm, that his interest was less than half the value of it; and why should he consent to take a conveyance which should falsely represent him to be the absolute and unconditional owner of the whole of it? The answer is irresistible. Brown was a dishonest man, and desired to conceal his interest in the farm so that his creditors could not reach it. He confesses, in one of'his disclosures, that *148 not far from the time of this conveyance to Hilton, he took from his own pocket $30 in money and gave it to one Christie, and then sold six tons of hay to Christie for the same money, and that he made this sham sale of the hay to cloak it from his creditors !
. With these facts before us, the conclusion is irresistible, that Brown’s purpose in giving Hilton an absolute warranty deed of his farm, was to protect it from attachment, and that Hilton must have known and participated in this purpose.
" A conveyance actually fraudulent is void against a subsequent purchaser for valuable consideration, even with notice.” American Leading Cases, 47, and the numerous authorities there cited. " A mortgagee is a purchaser within the statute of 27th Eliz.”'i5., 48. ' "There is no doubt but a mortgagee is a purchaser.” Lord Mansfield, in Chapman v. Emery, Cowper, 278. An absolute conveyance on full consideration, if made with intent to hinder and delay creditors, is undoubtedly void against existing creditors; but we do not intend to decide that such a conveyance is void against subsequent creditors or purchasers ; wo intend to decide only that, when a conveyance is for a consideration grossly inadequate, and is absolute in form only, .the grantor ■ retaining a valuable interest in the property, and the conveyance is made with the intent to hinder and delay creditors, and this intent is participated in by both parties, that such a conveyance is void, not only against existing creditors, but against subsequent creditors and bona fide purchasers, whether they have notice of such fraudulent conveyance or not. Ricker v. Ham, 14 Mass., 137; Clapp v. Leatherbee, 18 Pick., 131; Beal v. Warner, 2 Gray, 447; Wadsworth v. Havens, 3 Wend., 411; Hudnal v. Wilder, 4 McCord, 295.
The defendants claim that the conveyance from Hilton to Brown’s wife, was for a full and valuable consideration paid by her, and that she ought to be regarded as a bona fide purchaser, and her title, and the title of those claiming un *149 der her, protected as such. The conveyance to her purports to have been made for the consideration of $500. She gave her notes for $150, and the evidence satisfies us that these notes were paid by her husband. If Mrs. Brown paid the balance of $350, where did she get the money? and, as Hilton is proved to have been in Court, during the trial at Nisi Priv.s, why was he not called to prove the payment ? Where a deed is impeached on the ground of fraud, the clause acknowledging payment of the consideration is the lowest species of prima facie evidence, inasmuch as the same motives which would’lead parties to make a fraudulent conveyance, would induce them to insert, in the strongest terms, an acknowledgment of the payment of the consideration. Per Shaw, C. J., in Clapp v. Tirrell, 20 Pick., 247. The circumstances surrounding Mrs. Brown are more than sufficient to Control the consideration clause in the deed. It is not protended that she had sufficient means or property of her own, but Elvira D. Leathers, the defendant who claims to own the premises, testifies that "her mother said her friends let her have it.” What friends ? Her relations were all poor, except one brother, who owned a small farm. Elvira was 27 years old, and none of her mother’s relations had visited her within her remembrance. "Her mother did not say what friends let her have the money, nor how much, nor when.” If friends had let her mother have $350 to aid her in buying this firm, is it probable that the names of those friends would have remained forever concealed ? It is incredible ! We believe that if anything was paid to Hilton, either before, at the time, or after the conveyance to Mrs. Brown, it must have come from her husband, and that the conveyance to her was in pursuance of the original design of keeping it from Brown’s creditors. Mrs. Brown’s title, therefore, cannot'be protected upon the ground that she was a bona fide purchaser for value. And, as her heirs can be in no better condition in this respect than their ancestor, the title of Elvira and her sister by descent cannot be supported. Besides, as between bona fide purchasers, the eldest *150 title prevails, and the conveyances under which the demand-ant claims were prior in point of time to the conveyance to Mrs. Brown. Qui prior est• in tempore, potior est in jure. 1 Story’s Eq., § 381, 434.
This view of the case renders it unnecessary to inquire whether the conveyance from Hilton to Mrs. Brown, in consideration of her promissory notes and a mortgage to secure them, she being at the time a married woman, was valid or not. The Court have decided in another case, (Brookings v. White, 49 Maine, 479) that a married woman’s mortgage, although made to secure her own promissoiy notes, is not void, overruling all former decisions and dicta to the contrary.
Of freehold estates to commence in futuro. — Another question raised in this case is, whether the deed from Mrs. Brown to Oliver S. Nay was valid. The objection to it is, that it purports to convey a freehold estate to 'commence in futuro; and such is its effect, for by its terms Mrs. Brown was "to have quiet possession, and the entire income of the premises until her decease.”
Deeds in which grantors have reserved to themselves estates for life are believed to be very common in this State; and whether or not such deeds are valid is certainly a very important question, and ought to be authoritatively decided.
It was a principle of the old feudal law of England that there should always be a known owner of every freehold estate, and that the freehold should never, if possible, be in abeyance. This rule was established for two reasons : — i. That the superior lord might know on whom to call for the military services due from every freeholder, as otherwise the defence of the realm would be weakened. 2. That every stranger who claimed a right to any lands might know against whom to bring his suit for the recovery of them; as no real action could be brought against any one but the actual tenant of the freehold. Consequently, at common law, a freehold to commence in futuro could not be conveyed, because in that case the freehold would be in abeyance from the execution of the conveyance till the future estate of the *151 grantee should vest. And it is laid down in unqualified terms in several cases in Massachusetts, and in one in this State, that an estate of freehold cannot be conveyed to commence in futuro by a deed of bargain and sale, which owes its validity to the statute of uses, and not to the common law.
Rut the doctrine, that freehold estates to commence in futuro cannot be conveyed by deeds of bargain and sale, since the passage of the statute of 27 Henry 8, c. 10, commonly called the statute of uses, is clearly erroneous. It is clear that, at common laxo, such conveyances could not be made ; and it is equally clear that, by virtue of the statute of uses, such conveyances may be made. Prior to the reign of Henry 8, real estate could be so held that one person would have the legal title, and another the right to the use and income. To obviate many supposed inconveniences which had grown out of this practice of separating the legal title from the use, the statute of uses was passed, by which it Avas enacted that the estates of the persons so seized to uses should be deemed to be in them that had the use, in such quality, manner, form, and condition, as they had before in the use. It will be noticed that the effect of this statute was to annex the legal title to the use, so that they could not bo separated. Mr. Oruise says, that when this statute first became a subject of discussion in the courts of law, it was hold by the Judges that no uses should be executed that Avere limited against the rules of the common law; but that this doctrine was not and could not be adhered to, for the statute enacts that the legal estate or seizin shall be in them that have the use, in such quality, manner, form, and condition, as they before had in the use; that chancery having permitted uses to commence in futuro, and to change from one person to another, by matte]- ex post facto, the courts of law were obliged to admit of limitations of this kind. The statute did not attempt to limit or control the doctrine of uses; it simply declared that where the use was, there the legal estate should be also. The result was that it opened *152 several new modes of conveying legal estates wholly unknown to the common law; for whatever would convey -the use and income of real ‘estate before its passage, would, by virtue of the statute, convey the legal estate afterwards. It will thus be seen that conveyances through the medium of the statute of uses are effected in this way : —The owner of an estate in lands, for a consideration either good or valuable, agrees that another shall have the use and income of it, and the statute steps in and annexes the legal title to the use, and thus the cestui que use becomes seized of the legal estate in the same manner as before the statute he would have been seized of the use. The argument, presented in a syllogistic form, is this: — Since the statute of uses, freeholds can be conveyed in any manner that uses were conveyed before its passage. Before its passage, uses were conveyed to commence in futuro; therefore, freeholds may be conveyed to commence in futuro since its passage. It must be remembered, however, that neither legal estates nor uses can be so limited as.to create perpetuities. If future estates are so limited as to take effect in the lifetime of .one or more persons living, and a little more than twenty-one years after, the rule against perpetuities will not be violated. We will refer to a few leading authors : —
Mr. White, a very learned English writer, in one of his additions to the text of Mr. Cruise, says : — "By executory devise and conveyances operating by virtue of the statute of uses, freehold estates may be limited to commence in futuro.” 1 Greenleaf’s Cruise, title 1, § 36.
Mr. Ohitty, after stating that by a common law conveyance, a freehold to commence in futuro could not be conveyed, continues : — "But deeds operating under the statute of uses, such as bargain and sale, covenant to stand seized, or a conveyance to uses, or even a devise, may give an estate of freehold to commence in futuro.” 1 Chitty’s General Practice, 306. 2 Bl. Com., 144, note 6.
Mr. Sugden says : — "A bargain and sale to the use of D, after the death of S, is good.” Gilbert on Uses, (Sug. edition,) 163.
*153 Mr. Cornish: — "By a bargain and sale, or covenant to stand seized, a freehold may be created in futuro.” Cornish on Uses, 44.
Chancellor Kent: — "A person may covenant to stand seized, or bargain and sell, to the use of another at a future day.” 4 Kent’s Com., 298.
Mr. Archbold: — "Deeds acting under the statute of uses, such as bargain and sale, covenant to stand seized, or a conveyance to uses, or even a devise, may give an estate of freehold to commence in futuro.” Note to 2 Bl. Com., 166.
In a note to the 5th American edition of Smith’s Leading Cases, vol. 2, p. 451, after noticing the Massachusetts cases, in which it is held that a freehold to commence in futuro cannot be created by a deed of bargain and sale, the learned editors say: — "It is undoubtedly true that such limitations are bad at common law; but it seems equally well settled that they are good in deeds operating under the statute of uses, whether the use be raised on a pecuniary consideration or on blood or marriage. The point is so held in England, and has been repeatedly and expressly decided in New York, and several of the other States of this country. The attributes of a use are the same, whatever may be the consideration in which it is founded; and, if uses commencing in futuro were without the operation of the statute, when raised by a bargain and sale, they would be equally so when originating in a covenant to stand seized.”
In Rogers v. Eagle Insurance Co., 9 Wend., 611, the question underwent a most thorough examination, and the conclusion was, that a freehold to commence in futuro could be conveyed by a deed of bargain and sale, operating under the statute of uses; and the Court expressed surprise that any one should have ever supposed that such was not the law.
In Bell v. Scammon, 15 N. H., 381, the same question was raised, and the Court held that " a freehold in futuro could be conveyed either by deed of bargain and sale, or by a covenant to stand seized.”
*154 Mr. Washburn, in Ms late very able work on Real Property, (vol. 2, p. 617, § 16,) says that the reasoning of Chancellor Walworth, in Rogers v. Eagle Insurance Co. 9 Wench, 611, in which he maintains that an estate of freehold, to commence in futuro, can be conveyed by a deed of bargain and sale, and the authorities upon which he rests would seem to leave little doubt in the matter, beyond what arises from the circumstance that other Courts have taken a different view of the law.
It is true, that, in Massachusetts and this State, when'determining that the deeds then under consideration were valid upon other grounds, Judges have expressed- the opinion that a freehold to commence in futuro could not be conveyed by a deed of bargain and sale; but these opinions are mere obiter dicta, for they have never yet had the effect of defeating a deed. The idea seems to have originated in an unauthorized statement (probably accidental) to be found in Pray v. Pierce, 7 Mass. 381. Having under discussion the rule that deeds should be so construed as to give effect to the intention of the parties, and not to defeat it, the case of Wallis v. Wallis, 4 Mass., 135, was referred to by way of illustration, and the reporter makes the Court say that the deed in the latter case was held to be a covenant to stand seized, "because, as a bargain and sale, it would have been a conveyance of a freehold in futuro, and therefore void.” By turning to that case ( Wallis v. Wallis,) it will be seen that such a statement is unauthorized. The Court remarked that, by a common law conveyance, a freehold could not be conveyed to commence in futuro, which was unquestionably true; but the Court did not say that such a conveyance could not be made by a deed of bargain and sale, which owes its validity to the statute of uses, and not to the common law. Why the deed in Wallis v. Wallis was not sustained as a bargain and sale, instead of covenant to stand seized, does not appear. The case was submitted without argument, and, as the deed could readily be sustained as a covenant to stand seized, it may not have occurred to the *155 Court that it could just as well be sustained as a bargain and sale. On careful examination, it will be seen that these cases (Wallis v. Wallis and Pray v. Pierce,) are not authorities for the doctrine they are so often cited in support of.
In Welch v. Foster, 12 Mass., 93, the deed, for a valuable consideration, to be paid whenever the deed should take effect, and not otherwise, purported to convey a certain part of a mill, with the land, &c., " provided that the said deed should not take effect or be made use of, until the said millpond should cease to be employed for the purpose of carrying any two mill-wheels.” It was held that nothing passed by the deed, not because it was to fake effect only upon the happening of a future event, but because the event, if it should ever happen, might be delayed much beyond the utmost period allowed for the vesting of estates on a future contingency. The event, it was hold, must, in its original limitation, be such that it must either take place, or become impossible to take place, within the space of one or more lives in being, and a little more than twenty-one years afterwards, to prevent the creating of a perpetuity, or an unalienable estate. Such is undoubtedly the law. Besides, no consideration was ever paid for the deed, and the grantor afterwards conveyed to another. Under these circumstances the Court very properly held the deed void. But the distinction made by Judge Jackson, in that case, between covenants to stand seized, and deeds of bargain and sale, is mei’e dictum, and has neither reason nor authority to rest upon.
Speaking of the qualities of a bargain and sale, Judge Jackson says : — " One of these qualities is, that it must be to the use of the bargainee, and that another use cannot be limited on that use: from vohich it follows that a freehold to commence in futuro cannot be conveyed'' in this mode; as that would be to make the bargainee hold to the use of another until the future freehold should vest.” Hold what? Upon the execution of a deed in which the grantor reserves to *156 himself an estate for life, and conveys the residue, the grantee obtains á present vested right to a future enjoyment of the property; but, until the future freehold vests, the use, the seizin, and the right of possession, remain with the grantor, and there is no- conceivable thing that the bargainee will be required to "hold to the use of another.”
Judge Jackson seems to have supposed that when such a deed is executed the legal estate or seizin passes immediately to the grantee, and that, until his own future freehold vests, he holds this legal estate, or ideal seizin, to the use of the grantor. But such a theory is wrong, and contrary to every authority we have' been able to find. In fact, under the statute of uses, such a theory, which separates the legal estate from the use, cannot be correct; for, by the very terms of the statute, the lawful seizin, estate, and possession, shall be deemed and adjudged to be in him that hath the use, to all intents, constructions, and purposes in law; and is made applicable to "any such use in fee simple, fee tail, for life, or for years.” "The seizin remains in the person creating the future use till the springing use arises, and is then executed to this use by the statute.” 2 Washburn on Real Prop., 282. "If raised by a covenant to stand seized, or bargain and sale, the estate remains in the covenantor or bargainor until the springing use arises.” Gilbert on Uses, Sugden’s note, 163. "A person may covenant to stand seized, or bargain and sell, to the use of another at a future day.” In such a case "the use is severed out of the grantor’s seizin.” 4 Kent* 298. "Here is a conveyance to the bargainee to take effect at the decease of the bargainor, which creates a resulting use to the latter during life, with a vested use in remainder to the bargainee in fee, both uses being served, in succession out 'of the seizin of the bargainor.” Jackson v. Dunsbah, 1 Johns. Cases, 96.
The rule, that a'bargain and sale must be to the use of the bargainee and not to the usé of another, applies to only so much of the estate as is bargained for, and not to the residue, which is not bargained for, and not paid for; and *157 the rule is not violated, and there is nothing inequitable or repugnant to the grant, in requiring him to wait for the enjoyment of the property till such time as, by the express terms of the deed under which he claims, he is entitled to it.
It will be noticed, that Judge JacKson assumes the existence of a rule, that one use cannot be limited upon another,- and that it would be a violation of this rule to give effect to a deed of bargain and sale of a freehold, to commence in futuro. Such a rulé does exist -in England. Mr. Watkins, in his introduction to his very able work on conveyancing, says, that " about the time of passing the statute of uses, some wise man, in the plenitude of legal learning, declared there could not be an use upon an use; and that this very wise declaration, which must have surprised every one who was not sufficiently learned to have lost his common sense, was adopted;” and Lord Hardwicke, in Hopkins v. Hopkins, 1 Atk., 591, says, that by this means, a statute made upon great consideration, introduced in a solemn and pompous manner, has had no other effect than to add, at most, three words to a conveyance. Mr. Williams, in his work on Real Property, page 124, says this rule has much of the technical subtilty of the scholastic logic which was then prevalent. Lord Mansfield calls it " absurd narrowness.” 2 Doug., 774. JBlackstone calls it a "technical scrupleand Mr. jSugden, in a note to Gilbert on Uses, page 348, says it never ought to have been sanctioned at all. In Thacher v. Omans, decided in 1792, (reported in 3d Pick., 521,) on page 528, the Court refer to the censures of Blackstone and Lord Mansfield, and express strong doubts as to the propriety of admitting it in this country; and Mr. Qreenleaf says it may well be doubted whether the rule has been adopted in this country. Note to Greenl. Cruise, title 12, c. 1, § 4. With such a weight of authority against it, if the effect of the rule would be to defeat such conveyances as we are now considering, we think we might be warranted in rejecting it altogether. But such is not its effect. When a freehold is conveyed, to commence at a future day, till such *158 future day arrives the use results to the grantor, and then passes to the grantee; and the uses are not limited one upon the other, but one after the other; and, in this way, a fee simple may be carved into an indefinite number of less estates. "So long as a regular order is laid down, in which the possession of the lands may devolve, it matters not how many kinds of estates are granted, or on how many persons the same estate is bestowed. Thus, a grant may be made at once to fifty different people, separately, • for their lives.” Williams on Reai Prop., 189 — '90. "Shifting or substituted uses do not fall within this technical rule of law, for they are merely alternate uses.” 4 Kent’s Com., 301.
The statement that a freehold to commence in futuro cannot be conveyed by a deed of bargain and sale, which seems first to have been made in Pray v. Pierce, as before stated, has been several times repeated in Massachusetts, (Welsh v. Foster, 12 Mass., 93; Parker v. Nichols, 7 Pick., 115; Gale v. Coburn, 18 Pick., 397 ; Brewer v. Hardy, 22 Pick., 376;) and once at least in this State, (Marden v. Chase, 32 Maine, 329 ;) but the only case we have found in which an attempt has been made to give a reason for the supposed rule is that of Welsh v. Foster; and a careful examination has satisfied us that the argument in that case is unsound,' and not supported by any adjudged case that has the weight of authority. It is admitted in all these cases that if it can be shown that the parties to such deeds are near relatives, effect may be given to them as covenants to stand seized, made, not as they purport to be, for a pecuniary consideration, but- in consideration of love and affection. And there is no doubt that if two deeds should be executed instead of one; that is, if the grantor should first convey the whole estate, and then take back a life lease, the transaction would be held legal. The doctrine, therefore, that a freehold to commence in futuro cannot be conveyed by a deed of bargain and sale, amounts to no inore than this : — that if the owner of a fee simple estate proposes to reserve to himself a life estate, and to sell the residue, if he deals with a rela *159 live, such an arrangement can be carried into effect by making one deed; but if he deals with a stranger it will be necessary to make two. It is certainly very strange that a doctrine so technical, so easily evaded, and so utterly destitute of merit, should have gained the currency it has.
We entertain no doubt that, by .deeds of bargain and sale, deriving their validity from the statute of uses, freeholds may be conveyed to commence in futuro. It will be seen that the law is so held in England, and by an overwhelming weight of authority in this country. In fact that such was the law seems never to have been doubted except in Massachusetts and this State; and we think the error originated in the unauthorized remark found in Pray v. Pierce, and has been repeated from time to time without receiving that consideration which its importance demanded.
We are also of opinion that effect may be given to such deeds by force of our own statutes, independently of the statute of uses. Our deeds are not framed to convey a use merely, relying upon the statute to annex the legal title to the use. They purport to convey the land itself, and being duly acknowledged and recorded, as our statutes require, operate more like feoffments than like conveyances under the statute of uses. In Thacker v. Omans, 3 Pick, on p. 525, Chief Justice Dana, speaking of our statute of conveyances, first enacted in 1697, re-enacted in the Revised Laws of 1784, incorporated into the statutes of this State in 1821, and still in force, says: — "This statute was evidently made to introduce a new mode of, creating or transferring freehold estates in corporeal hereditaments; namely, by deed, signed, sealed, acknowledged, and recorded, as the statute mentions; it does not prescribe any particular kind of deeds or conveyances, but is general, and extends to all kinds of conveyances.” On p. 532 he further says: "It seems evident to me that a deed executed, acknowledged and recorded as our statute requires, cannot be considered as a bargain and sale, because the legal estate is thereby passed without the operation of the statute of uses, in as ample a *160 manner as by a feoffinent at common law, accompanied with the ancient ceremony of livery of seizin.” Such also were the opinions of Chancellor Kent and Professor Greenleaf., 4 Kent, 461; Greenleaf’s Cruise, title 12, c. 1, § 4, note; title 32, c. 4, § 1, note. Mr. Oreenleaf., in the note first cited, says that in most, of the States, (including Maine,) " deeds of conveyance derive their effect, not from the statute of uses, but from their own statutes of conveyances; operating nearly like a feoffment, with livery of seizin, to convey the land, and not merely to raise a use to be after-wards executed by the statute of uses.” Mr. Oliver, in his work on conveyancing, ed. of 1853, p. 281,' speaking of ,our common warranty deed, says : — "This deed derives its operation from statute and has therefore some properties peculiar to itself. * * * The transfer is not effected by the execution of a use, as in a bargain and sale, but the land itself is conveyed, as in a feoffment, except that livery of seizin is dispensed with, upon complying with the requisitions of the statute, acknowledging and recording, substituted instead of it.” We think these views are sound; and if any of the technical rules which have grown up under the statute of uses stood in the way of giving effect to deeds executed in accordance with the provisions of our statute, simply because they purport to convey freeholds "to commence at a future day, we think effect might be given to them independently of the statute of uses. But in our' judgment no such rules do stand in the way of giving effect to such deeds. They may b.e upheld either as bargains and sales under the statute of uses, or as conveyances deriving their validity from our own statutes.
Having come to the conclusion that the demandant is entitled to recover upon another ground, it was not absolutely, necessary to consider the' validity of the deed from Mrs. Brown to Oliver S. Nay, which purports to convey a freehold to commence in futuro. But, as the question involved is an important one, and was ably argued by the counsel in the case; and, as the Court has already decided one case *161 witbin the past year, (Hunter v. Hunter, in the county of Sagadahoc,) in- accordance with the views here expressed, but without any written opinion; and, as several other suits involving the same question, are still pending before the Court, we deemed it best to make known our decision of the question, and to state our reasons for the decision, in connection with this case. Judgment for demandant.
Appleton, C. J., Cutting, Davis and Barrows, JJ., concurred.