AT THE

## OCTOBER · SESSION 1869, IN BOSTON.

PRESENT:

Hon. REUBEN A. CHAPMAN, CHIEF JUSTICE.
Hon. HORACE GRAY, JR., ⎫
Hon. JOHN WELLS, ⎪
Hon. JAMES D. COLT, ⎬ JUSTICES.
Hon. MARCUS MORTON, ⎭

## NORFOLK COUNTY.

### ELIZABETH TRAFTON vs. SAMUEL HAWES.

A deed of land to take effect at the grantor's death is good as a covenant to stand seised to the grantee's use, notwithstanding the absence of any relationship between them by blood or marriage.

On an issue of title between a grantee and the grantor or his heirs, not involving fraud in procuring the deed, the consideration of the deed is not open to inquiry.

On an issue of title between a grantee and an heir of the deceased grantor, the grantee is not a competent witness in her own behalf, under the Gen. Sts. c. 131, § 14. to prove performance of a condition on which the deed was given.

WRIT OF ENTRY dated April 27, 1868, to recover land in Weymouth. The demandant claimed title under a deed dated August 10, 1861, by which, "in consideration of $650" by her paid, "the receipt whereof is hereby acknowledged," Samuel

Hawes did "give, grant, bargain, sell and convey unto" her, and her heirs and assigns, the demanded premises, *habendum* to her and her heirs and assigns forever, "after my decease, upon condition that she continues to keep my house and take care of me during my natural life, or her own natural life if she dies first,' with the usual covenants of lawful seisin in fee simple by the grantor, against incumbrances, of good right to sell and convey, and of general warranty. The tenant claimed title to one undivided fourth of the premises, as one of the four children and heirs at law of the grantor.

At the trial in the superior court, before *Brigham*, C. J., it appeared that Samuel Hawes, the grantor, died January 14, 1864, aged eighty-seven years; and that there was no relationship, by blood or marriage, between him and the demandant. The tenant asked for a ruling that the deed was invalid as conveying a freehold to commence *in futuro*, and for want of a consideration of blood or marriage could not be sustained as a covenant to stand seised to the use of the demandant; but the judge refused so to rule.

The demandant introduced evidence tending to show that the premises were not worth at the date of the deed more than the sum of $650 expressed as its consideration, and that the grantor was at that time indebted to her in that sum, and she in writing released the debt to him when the deed was executed and delivered. The tenant however contended and offered evidence tending to show that the only consideration for the deed was future services to be rendered by the demandant under its condition.

Under the refusal of the judge, above stated, to rule as requested by the tenant, as to the invalidity of the deed for want of a consideration of family connection, the case "went to the jury upon the question of the mental capacity of the grantor to give the deed, and the question of a breach of the condition of the deed." After the tenant had testified, as a witness generally, in his own behalf, the demandant was permitted, against his objection, to testify as a witness generally, in her own behalf. The jury found for the demandant, and the tenant alleged exceptions.

*W. Colburn,* for the tenant.

*E. Ames,* for the demandant.

WELLS, J.   The demandant is grantee in a deed of warranty in the common form, which recites a pecuniary consideration paid, *habendum* to the grantee, her heirs and assigns forever, after the decease of the grantor, upon condition of certain services to be rendered to him.   There was no relation of blood or marriage between the grantor and grantee.   The grantor has since died; and the suit is against one of his heirs.   The tenant insists that the deed is invalid as conveying a freehold to commence *in futuro,* and that it cannot be sustained as a covenant to stand seised, for want of a consideration of blood or marriage.

This position of the tenant we understand to be in accordance with the law of England.   It has always been held that a feoffment, or other conveyance deriving its operation from the common law, cannot be made to take effect in future.   The same rule is applied in England to a " bargain and sale," which derives its operation from the statute of uses.   St. 27 Hen. VIII. *c.* 10.   Although the owner of a remainder, or future interest in lands, may convey his interest by bargain and sale; yet the sale of a future interest, by one having the present legal estate, requires either that he should in the mean time hold that legal estate to support the future use; which is, by construction, a covenant to stand seised; or else that the bargainee should hold the estate for the use of the bargainor until the time arrive for his own interest to take effect; which would be a use limited upon a use, and not sustainable under the rule in respect to the limitation of uses.   A bargain and sale is construed to imply the present transfer of the bargainor's interest, and not the limitation of a future interest out of his estate.

It has also been uniformly held in England, ever since the statute of uses was passed, or rather since the statute of enrolments, (St. 27 Hen. VIII. *c.* 16,) that a covenant to stand seised can be sustained only by a consideration of blood or marriage.

In this country there is much confusion and uncertainty in the law upon this subject, whether sought in the announcements of

judicial opinion or in the discussions of text writers. The doctrine that a bargain and sale, as well as a common law conveyance, is invalid to create a future interest in lands of the grantor, has been recognized and repeatedly declared to be the law in Massachusetts. *Wallis* v. *Wallis*, 4 Mass. 135. *Pray* v. *Pierce*, 7 Mass. 381. *Welsh* v. *Foster*, 12 Mass. 93. *Parker* v. *Nichols*, 7 Pick. 111. *Gale* v. *Coburn*, 18 Pick. 397. *Brewer* v. *Hardy* 22 Pick. 376. Also in Maine. *Emery* v. *Chase*, 5 Greenl. 232. *Marden* v. *Chase*, 32 Maine, 329. In several of the cases above cited, as well as in *Miller* v. *Goodwin*, 8 Gray, 542, the court may be said to have impliedly recognized the doctrine that a covenant to stand seised requires a consideration of blood or marriage, by looking to the existence of such a fact in the case for the support of the deed, notwithstanding the recital of a pecuniary consideration in the deed itself. But we are not aware that the court has ever declared such a consideration to be necessary. In *Parker* v. *Nichols*, 7 Pick. 111, Mr. Justice Putnam, after pointing out the existence of the relation, remarks : " So that, if it were necessary in this state, as it seems *to be in England*, to prove a consideration of blood or marriage to support a covenant to stand seised to uses, it might be presumed." This sentence is also quoted by Chief Justice Shaw in the case of *Gale* v. *Coburn*, 18 Pick. 397, 402.

In New York, the doctrine that a deed of bargain and sale cannot be made to take effect *in futuro*, is regarded by Mr. Justice Lewis, in *Jackson* v. *Dunsbagh*, 1 Johns. Cas. 91, as resulting only from the English statute of enrolments, and therefore not to prevail in that state. This opinion is approved in *Jackson* v. *Swart*, 20 Johns. 85, though in neither case was it essential to the judgment. It is distinctly announced however in *Jackson* v. *McKenny*, 3 Wend. 233, and in *Rogers* v. *Eagle Fire Co.* 9 Wend. 611. It is held however, in New York, that a consideration of blood or marriage is absolutely essential to the validity of a covenant to stand seised. *Jackson* v. *Sebring*, 16 Johns. 515. *Jackson* v. *Cadwell*, 1 Cowen, 622. *Jackson* v. *Delancey*, 4 Cowen, 427.

The courts in New Hampshire follow the New York decisions. *French* v. *French,* 3 N. H. 234. *Underwood* v. *Campbell,* 14 N. H. 393. *Bell* v. *Scammon,* 15 N. H. 381.

The doctrine is said to be founded upon the peculiar domestic character of this species of conveyance. 4 Kent Com. (6th ed.) 493. In *Jackson* v. *Sebring,* 16 Johns. 515, the learned chancellor gives this remarkable account of it: "A covenant to stand seised is a peculiar species of conveyance, confined entirely to family connections, and founded on the tender considerations of blood or marriage. No use can be raised for any purpose, in favor of a person not within the innuence of that consideration. There is no cold, selfish, calculating motive to contaminate the contract, nor is the conveyance to be profaned by the footstep of a stranger." Nevertheless it is said, 4 Kent Com. (6th ed.) 493, that "the existence of another consideration, in addition to that of blood or marriage, will not impede the operation of the deed." The law does indeed recognize the natural affections, and the mutual obligation of support which springs from the family relations, as affording a good and meritorious consideration, sufficient for a deed of conveyance. But that a form of conveyance should be so consecrated by a mere sentiment that it cannot be permitted to operate between any parties other than relatives, nor upon a pecuniary consideration, would be an anomaly, of which the law should not be suspected upon slight grounds. Upon every principle of the law of contracts, money is a sufficient consideration for the support of any contract whatever, so far as its validity depends upon a consideration, as such.

It is important therefore to examine the source of the distinction between covenants to stand seised and other contracts and conveyances, in relation to the consideration upon which they are supported. That such a distinction does exist in the English law is without question; and its assertion appears in the text of Mr. Greenleaf's edition of Cruise on Real Property, tit. 32, *c.* 2, § 41, and *c.* 10, § 12, without explanation, other than a reference to the case of *Welsh* v. *Foster,* 12 Mass. 93. Section 23 of the latter chapter, which is § 25 of the corresponding

chapter of Cruise's Digest, is as follows: "Where a deed is made in consideration of a sum of money, it will not operate as a covenant to stand seised." In a note, Mr. Greenleaf states that " the contrary is law in the United States; the reasons for the English rule not existing here."

In 2 Washb. on Real Prop. (1st ed.) 605, it is said : " The difference, theoretically, between a bargain and sale and a covenant to stand seised, consisted in the consideration out of which the use was raised to which the law united the seisin ; " although " this distinction seems to have been sometimes lost sight of by the courts." See also Ib. 613, pl. 9. The author suggests that the decisions in this country, giving effect to conveyances of land *in futuro* by deed of bargain and sale, amount only, in reality, to holding that estates may be created by covenant to stand seised upon a valuable consideration. See Ib. 124, pl. 25; 616, pl. 14–16.

In *Welsh* v. *Foster*, 12 Mass. 93, Mr. Justice Jackson uses this language : " The principle, then, seems to be, that a man may convey his land by a covenant to stand seised thereof to the use of another, either for certain good considerations, or for a valuable consideration; but in the latter case the conveyance, being in effect a bargain and sale, must have all the other requisites and qualities of a bargain and sale. One of these qualities is, that it must be to the use of the bargainee and that another use cannot be limited on that use ; from which it follows, that a freehold to commence *in futuro* cannot be conveyed in this mode ; as that would be to make the bargainee hold to the use of another, until the future freehold should vest." He proceeds to say that the English statute of enrolments, 27 Hen. VIII. *c.* 16, has never been adopted here ; but does not say how far or in what manner the English rule of law is modified by the absence of that statute provision ; and the case under consideration was disposed of upon another independent ground.

We are satisfied, however, that the distinction between a deed of bargain and sale and a covenant to stand seised, so far as it requires for the validity of the latter a consideration of blood or marriage, is artificial and constructive, depending entirely upon

the statute of enrolments, and having no pretext for continued existence where the provisions of that statute do not apply.

Prior to the statute of uses, deeds of bargain and sale and of covenant to stand seised did not operate to convey the title, but only the right to the beneficial use. As affecting the land itself, they were regarded as executory or unexecuted contracts. At law, they were of no force, as conveyances. In equity they were enforced by requiring him in whom was the legal title to hold that title for the benefit of him to whom the right of use had thus been transferred. A bargain and sale implies the sale and transfer of an interest existing at the time in the bargainor, whether in possession, or in remainder or expectancy. A covenant to stand seised implies the creation of a new interest in the bargainee out of the estate of the bargainor. In either case, the bargainor, having the legal title, was held to stand seised to the use of the bargainee : in the covenant to stand seised, because such was the nature of his contract, either in express terms or by judicial interpretation; in the bargain and sale, because the court imposed it upon him as an obligation resulting from his sale of the use, and necessary to give it effect. That construction was generally adopted which was best calculated to give effect to the instrument. Whether a deed belonged to the one class or the other was determined by the nature of the subject matter and the apparent intent of the parties, rather than by the form of the instrument. Courts of equity, however, refused to be moved to interfere actively in favor of a mere volunteer. It became necessary, therefore, in all cases, to show that the deed was founded upon a good consideration. A "bargain and sale" necessarily involves the idea of a valuable consideration. A covenant to stand seised does not exclude it. But the courts held that a consideration of blood or marriage was also sufficiently meritorious to sustain a deed of the latter class.

The statute of uses, 27 Hen. VIII. *c.* 10, provided that the legal title should follow the beneficial interest, and vest in the *cestui que use*, " after such quality, manner, form and condition as they had before in or to the use, confidence or trust that was in them." Under this statute it would seem that the rules

affecting the consideration and the construction of instruments would remain unchanged. The law simply carried the legal title where equity placed the equitable right.

The statute of enrolments, passed during the same year, 27 Hen. VIII. *c.* 16, provided that no lands "shall pass from one to another, whereby any estate of inheritance or freehold shall be made or take effect, or any use thereof to be made, by reason only of any bargain and sale, except by writing indented, sealed and enrolled." In applying this statute, as it did not include covenants to stand seised, the courts found it necessary to construe all deeds upon valuable consideration to be deeds of bargain and sale. Otherwise the purpose of the statute would have been entirely defeated; because a deed of bargain and sale, in form, might be construed as a covenant to stand seised, as it was in effect, and had always been construed whenever the nature of the case required; and a deed, in form of a covenant to stand seised, would operate to carry into effect that which was in fact a bargain and sale. The consequence was, that all deeds founded upon a valuable consideration were required to be enrolled in order to be held valid; and as they could be enrolled only as deeds of bargain and sale, it was held that they must take all the characteristics of a bargain and sale, according to the construction which had always been put upon that form of transfer. Covenants to stand seised upon consideration of blood or marriage continued to be good without enrolment, and were effectual to convey the legal title under the statute of uses. But they could not be aided by a valuable consideration, because, under the construction of the statute of enrolments, that had no effect except to show a bargain and sale, void if not enrolled, and operating if enrolled only as a bargain and sale. Hence it became, and has ever since remained, the settled law of England, that a covenant to stand seised upon a valuable consideration, without the relation of blood or marriage, is of no effect to pass title to lands.

Another peculiarity of English law may have some bearing upon the question we are considering, namely, that a voluntary conveyance, where there is no such relation of blood or mar-

riage, is void, not only against creditors but also against subsequent purchasers for value, even with notice of the prior deed.

The English statute of enrolments has no application to this country. In Massachusetts, all deeds of land are required to be recorded alike. A deed of itself imports a consideration. The recital of a consideration is conclusive for the purpose of supporting the deed against the grantor and his heirs. A voluntary conveyance or gift to a stranger is good against the grantor and his heirs. It is also good against a subsequent purchaser for value, in the absence of actual fraud. *Beal* v. *Warren*, 2 Gray, 447. The reason for distinguishing between a deed of bargain and sale and a covenant to stand seised, on the ground of the nature of the consideration, does not exist here. Between the grantor and his heirs and the grantee, in a controversy respecting the title, there is no question open, in relation to the nature or existence of the consideration; unless it be in connection with a charge of fraud in procuring the execution of the deed. It is the duty of the court to seek by construction to maintain rather than to defeat the operation of the deed. In case of a deed to take effect at the decease of the grantor, there being nothing to the contrary in the statutes or in the rules of law applicable to this Commonwealth, it is the duty of the court, in accordance with the foregoing principles of construction, to give to the deed its intended operation, by construing it as a covenant to stand seised to the use of the grantee, according to the nature of the use granted. The deed in the present case may therefore be properly maintained as a covenant to stand seised, notwithstanding the absence of the relation of blood or marriage between the grantor and grantee.

But the demandant was not a competent witness to prove performance of the condition upon which the deed was given. The deed was the contract in issue and on trial. It constituted the title on which the demandant rested her claim to the premises. The plea puts that title distinctly in issue. The grantor, ' one of the original parties to the contract," is dead, and the demandant is " the other party." The statute excludes her.

Gen. Sts. *c.* 131, § 14. *Straw* v. *Greene,* 14 Allen, 206. *Morony* v. *O'Laughlin, ante,* 184. On this ground a new trial must be granted. *Exceptions sustained.*