CLYMENA ALICE O'DAY, Appellant, v. B. F. MEADOWS and SUE I. B. O'DAY.

Division Two, March 6, 1906.

1. **CONTRACT: Between Husband and Wife: Validity.** A married woman has power to make a contract with her husband by which she accepts certain property as a marriage settlement in lieu of inchoate dower and other property rights between them arising out of such marital relation or other relation. Under our Married Woman's act she can contract and be contracted with, entirely without exception, with her husband, just as she can with other persons.

2. **DEED: Testamentary: Life Estate: Possession Postponed.** A husband and wife remised, sold and quit-claimed to an intermediary "an estate" in certain land "commencing upon the death" of the husband "and continuing so long as" the wife "shall live, to have and to hold said last created estate to the said" intermediary "and to his assigns, heirs, executors and administrators during said period hereinbefore fixed;" and the intermediary at once conveyed the property to the wife with

the same clauses. *Held*, that the deed was not testamentary in character, but created a present life estate in the wife, but postponed the right to possession or enjoyment to the death of the husband.

3. ——: ——: **Power of Revocation.** A marked distinction between a testamentary deed and ordinary conveyances is that the maker may at any time prior to his death revoke the former, but he cannot revoke the latter. '

4. ——: ——: ——: **Present Vested Estate.** The law favors vested estates, and estates created by written instruments will be held to vest at the earliest possible period unless a contrary intention is clearly manifested in the grant. And where the deed creates a present vested life estate, but postpones the right of enjoyment to the grantor's death, with no power in him of revocation, it will not be held to be testamentary.

5. ——: **Life Estate: Dependent on Life of Another.** Under our statute a deed creating a freehold estate *in futuro*, that is, a contingent estate *per auter vie*, without creating at the same time and by the same deed or instrument a particular estate to support it, may be valid. By that statute rules of the common law applicable to ancient feudal tenures and the restrictive effects of such laws upon alienations of real property are no longer applicable.

6. ——: ——: ——: **Statute: Freehold.** Section 4596, Revised Statutes 1899, provides: "When. an estate hath been or shall be, by any conveyance, limited in remainder to the son or daughter or to the use of the son or daughter of. any person to be begotten, such son or daughter born after the decease of his or her father shall take the estate in the same manner as if he or she had been born in the lifetime of the father, although no estate shall have been conveyed to support the contingent remainder after his death. And hereafter an estate of freehold or of inheritance may be made to commence in future by deed, in like manner as by will." *Held*, first, that the last sentence of the statute in reference to the creation of freehold estates *in futuro* by deed, is in no sense dependent upon the preceding sentence in reference to posthumous children; second, that the last sentence authorizes the creation by deed of freehold estates commencing in the future, and in that respect changes the rules of the common law applicable to such estates; and, third, under that statute and the provisions of section 900, Revised Statutes 1899, which provides that "conveyances of land, or of any estate or interest therein, may be made by deed executed by· any person having any

authority to convey the same, or by his agent or attorney, and acknowledged and recorded as herein directed, without any other act or ceremony whatever," a deed by the husband which created in his wife a present life estate to commence in enjoyment at his death was valid, and was not void because not supported by a previous particular estate.

7. **EXECUTED CONTRACT: Marriage Settlement: Rescission: Divorce: Alimony.** A husband and wife entered into an agreement for the settlement and division of their property by which the husband agreed to convey to her certain lands and other property in lieu of dower and her other rights arising out of the marital relation, and by valid deed executed the contract, and she sues for one of the tracts so conveyed to her but afterwards devised by him to defendant. *Held*, that she did not repudiate the contract by bringing suit for divorce and asking and obtaining alimony therein, nor could the court in that proceeding have rescinded and cancelled the contract or deeds, because her rights to the property had become vested, but the most the husband could have done (and that he did not do) would have been to defend against her claim for further alimony, and as the judgment in that case did not affirmatively cancel the contract and deeds, and her rights thereunder were in no wise adjudicated, that judgment cannot be held to defeat her action of ejectment.

8. **RES ADJUDICATA: Involved Issues.** A failure of a defendant to make all the defenses he was called upon by the nature of the proceedings to make, are as effective in a subsequent suit to his right to insist upon them as if they had in that proceeding been adjudged adversely to him.

Appeal from Greene Circuit Court.—*Hon. James T. Neville,* Judge.

REVERSED AND REMANDED (*with directions*).

*T. A. Sherwood* and *Henry C. Young* for appellant.

(1) Marriage settlements are not affected by subsequent divorce so as to divest rights which have vested thereunder, unless by express terms it is so decreed in the divorce proceeding. 9 Am. and Eng. Ency. of Law, 860; 19 Am. and Eng. Ency. of Law, 1230, 1248; Saunders v. Saunders, 144 Mo. 482; Kinzey v. Kinzey, 115

Mo. 501; Doyle v. Rolwing, 165 Mo. 238; Schuster v. Schuster, 93 Mo. 438; Rose v. Rose, 93 Ind. 255; Patton v. Loughbridge, 49 Iowa 218; Dixon v. Dixon, 23 N. J. Eq. 316; Lister v. Lister, 35 N. J. Eq. 49; Bufe v. Bufe, 88 Mo. App. 627. (2) The divorce decree operated to settle all questions pertaining to property rights between the parties to that proceeding and their privies. The defense attempted to be invoked here should have been, and is presumed to have been, interposed in that action, and has become *res adjudicata*. Patton v. Loughbridge, 49 Iowa 218; Fischli v. Fischli, 1 Blackf. (Ind.), 360; 1 Herman on Estoppel and Res Adjudicata, sec. 405, p. 474; Stultz v. Stultz (Ind.), 8 N. E. 238; Dunham v. Dunham, 128 Mass. 34; Roe v. Roe (Kan.), 35 Pac. 808; Thompson v. Thompson (Ind.), 31 N. E. 529; Rose v. Rose, 93 Ind. 179; Mucklenberg v. Holler, 29 Ind. 139; Walker v. Walker (Ind.), 50 N. E. 68; Natcher v. Clark (Ind.), 51 N. E. 468; Gallagher v. Gallagher (Wis.), 77 N. W. 145; Murray v. Murray (Ind.), 53 N. E. 946; Weidman v. Weidman (Ohio), 48 N. E. 506; Richardson v. Stowe, 102 Mo. 43; Barnett v. Barnett (N. M.), 50 Pac. 337; Plaster v. Plaster, 47 Ill. 290; McKnight v. McKnight (Neb.), 98 N. W. 62; Hills v. Hills, 94 Ind. 436; Nicholson v. Nicholson, 113 Ind. 131; Yost v. Yost (Ind.), 41 N. E. 11; Morse v. Morse, 25 Ind. 156; Kamp v. Kamp, 59 N. Y. 212; Viertel v. Viertel, 99 Mo. App. 717; Luckowski v. Luckowski, 108 Mo. App. 205; 7 Ency. Plead. & Prac., 56, 128; 1 Ency. Plead. & Prac., 414; Crews v. Mooney, 74 Mo. 26; Waters v. Waters, 49 Mo. 385; State ex rel. v. St. L. Ct. of App., 99 Mo. 216; In re Gladys Morgan, 117 Mo. 254; Chester v. Chester, 17 Mo. App. 657, citing Plaster v. Plaster, 47 Ill. 294; Husband v. Husband, 67 Ind. 585; Schmeding v. Doellner, 10 Mo. App. 373; Calame v. Calame, 9 C. E. Green 440, 10 C. E. Green 548; Gerke v. Gerke, 100 Mo. 237; Salisbury v. Salisbury, 92 Mo. 683; Marx v. Marx, 89 Mo. App. 455. (3) The marriage settlement was im-

properly admitted in evidence for the purpose either:
(a)   Of defeating the operative words of conveyance
contained in the deeds under which plaintiff holds or to
establish a resulting trust.   Bobb v. Bobb, 7 Mo. App.
508, 89 Mo. 411; Weiss v. Heitkamp, 127 Mo. 30.   (b)
Or of controlling or affecting their terms.   Davidson v.
Manson, 146 Mo. 608.   (c)   Or of showing the crea-
tion of a jointure, or enlarging the terms of the divorce
decree.   Halferty v. Scearce, 135 Mo. 428; Davis v.
Davis, 61 Mo. 395; Murray v. Murray (Ind.), 53 N. E.
946; Stultz v. Stultz (Ind.), 8 N. E. 238; Moon v. Cot-
tingham, 90 Ind. 239; Perry v. Perryman, 19 Mo. 469;
Martin v. Norris, 91 Mo. 465; Dudley v. Davenport, 85
Mo. 462; Farris v. Coleman, 103 Mo. 360.   (4)   Con-
ceding for the argument that the deeds in question may
be impeached by showing a lack of consideration there-
for,   nevertheless   the post-nuptial contract between
plaintiff and John O'Day, deceased, was valid and
binding upon the parties thereto both at law and in
equity and constituted a sufficient consideration for the
conveyances.   Rice, Stix & Co. v. Sally, 176 Mo. 131;
Bank v. Hageluken, 165 Mo. 323; Case v. Espenschied,
69 S. W. 276; McBreen v. McBreen, 154 Mo. 323; Saun-
ders v. Saunders, 144 Mo. 482; Pawley v. Vogel, 42 Mo.
291; Garbut v. Bowling, 81 Mo. 214; Halferty v.
Scearce, 135 Mo. 428; Bufe v. Bufe, 88 Mo. App. 627;
Turner v. Shaw, 96 Mo. 27; Woods v. Turner, 94 Mo.
124; Walsh v. Chambers, 13 Mo. App. 301; Betts v.
Magoon, 85 Mo. 580; Schouler v. Schouler, 18 Mo. App.
69; Smith v. Smith, 50 Mo. 126; Morrison v. Thistle,
67 Mo. 596; Richardson v. Lowery, 67 Mo. 411; Schus-
ter v. Schuster, 93 Mo. 438; Gilliland v. Gilliland, 96
Mo. 522; Thomas v. Thomas, 107 Mo. 459; Ilgenfritz
v. Ilgenfritz, 116 Mo. 429; Curd v. Brown, 148 Mo. 82;
Bank v. Sampson, 152 Mo. 658; Doyle v. Rolwing, 165
Mo. 241.   (5)   The deeds, if valid upon their face, oper-
ated either as a voluntary post-nuptial settlement or
or as a post-nuptial jointure, and will not be disturbed

in equity. Cases cited under point 4, supra; 19 Am. and
Eng. Ency. of Law, 1230; 17 Am. and Eng. Ency. of
Law, 712. (6) The deeds were valid upon their face,
and operated to convey to plaintiff at the time of their
execution and delivery a present vested estate for life,
beginning in future, i. e., upon the death of John
O'Day. First. (a) They created a vested interest and
took effect by their terms and by delivery *in praesenti*
as contradistinguished from conveyances which are
testamentary in their character either because limited
by their terms to take effect only after the grantor's
death or because retained in the grantor's possession
and under his dominion during his lifetime and not de-
livered until after his death. Murphy v. Gabbert, 166
Mo. 596; Miller v. Holt, 68 Mo. 584; 1 Devlin on Deeds,
(2 Ed.), sec. 309; Leaver v. Gauss, 62 Iowa 314; Nichols
v. Emery, 109 Cal. 323; White v. Hopkins, 80 Ga. 154;
2 Devlin on Deeds. (2 Ed.), secs. 853, 854, 855, 857; R.
S. 1899, sec. 2950; Dozier v. Toalson, 180 Mo. 552;
Griffin v. McIntosh, 176 Mo. 398. (b) And they took
effect although a life estate was reserved in the grantor.
Allen v. De Groodt, 105 Mo. 445; Sneathen v. Sneathen,
104 Mo. 209; Stoddard v. Wells, 120 Mo. 25; Saunders
v. Saunders, 144 Mo. 482; Rogers v. Bank, 82 Mo. App.
384. Second. Estate of freehold *in futuro* may be made
to commence by deed as well as by will. R. S. 1899,
sec. 4596; 1 Bouvier's Law Dic., p. 560; 1 Burrill's Law
Dic., p. 585; 2 Wash. Real Prop., 641; Aubuchon v. Ben-
der, 44 Mo. 560; 4 Kent. Com. 199. Third. The deeds
were effective under the statute of uses to convey the
life estate. Wilson v. Albert, 89 Mo. 537; 3 Wash.
Real Prop., 354; Martindale on Conveyances, sec. 59;
2 Wash. Real Prop., 450, 451; 4 Kent Com.,
493, 494; Anglade v. St. Avit, 67 Mo. 434; Tindall v.
Tindall, 167 Mo. 218; Bray v. Conrad, 101 Mo. 331; Jack-
son v. Fish, 10 Johns. 456; Hunt v. Hunt, 14 Pick. 374;
McConnell v. Reed, 4 Scam. 117; Fash v. Fash, 38 Ill.

368; Eckman v. Eckman, 68 Pa. St. 460; Bell v. Scammon, 41 Am. Dec. 706; Bogy v. Shwab, 13 Mo. 380; Lynch v. Livingston, 8 Barb. (N. Y.) 463; Jackson v. Sebring, 8 Am. Dec. 357; McKinney v. Settles, 31 Mo. 544. Fourth. The intent of the parties, evidenced by the instruments, is to govern their construction. Davis v. Hess, 103 Mo. 31; Long v. Timms, 107 Mo. 512; McCulloch v. Holmes, 111 Mo. 445; Utter v. Sidman, 170 Mo. 293; Miller v. Holt, 68 Mo. 584. (7) A parol rescission of the deeds under consideration cannot be shown so as to operate as a reconveyance of either the legal or equitable title. Real estate cannot be conveyed except by deed. Even the destruction of the instrument cannot have that effect. 1 Dev. on Deeds, sec. 300. (8) A rescission in fact was not shown in this case. Miller v. Crigler, 83 Mo. App. 395; Mfg. Co. v. McCord, 65 Mo. App. 507; Robinson v. Siple, 129 Mo. 208.

*Delaney & Delaney* for respondents.

(1) The agreement between John O'Day and his wife Clymena Alice O'Day, plaintiff herein, is postnuptial and was not binding on the wife according to the rules of common law. Neither is it binding since the Married Woman's act, for the wife by section 2951, Revised Statutes 1899, is given the right of election, in a case like the present, and such right of election is but another name for the right of rescission. The alleged contract was therefore not a contract at all as it lacked mutuality. It was voidable at the election of Clymena Alice O'Day, and some act on her part, or acquiescence on her part, after she became discovert, was necessary before the agreement could be dignified as a contract. Her action in bringing suit for divorce and claiming alimony was a direct repudiation of such agreement and of deeds made pursuant thereto. Roberts v. Walker, 82 Mo. 200; Tarbut v. Bowling, 8 Mo. 214; Halferte v. Scarce, 135 Mo. 429; Sackman v. Sack-

man, 143 Mo. 576; McBreen v. McBreen, 154 Mo. 323; Saunders v. Saunders, 144 Mo. 493; Schuster v. Schuster, 93 Mo. 438; Kingsley v. Kingsley, 115 Mo. 496; Ilgenfritz v. Ilgenfritz, 116 Mo. 429. (2) The conveyance from John O'Day and wife to A. C. O'Day (and it is on this deed that plaintiff herein must bottom her right), does not pass a legal title sufficient to maintain ejectment, because: 1st. The paper is testamentary in its nature. 2nd. It attempts by deed to create a freehold estate *in futuro*, to-wit, a contingent estate *per auter vie* without creating at the same time and by the same deed or instrument a particular estate to support it. This is clearly testamentary. No present estate passes. Murphy v. Gabbert, 166 Mo. 596; Turner v. Scott, 51 Pa. St. 126; Leaven v. Gauss, 62 Ia. 314; Pinkham v. Pinkham, 55 Neb. 79. (3) The divorce decree does not conclude O'Day's devisees. The question involved in this issue was not involved in the divorce issues. The fact that O'Day might have adjusted this matter by tendering an issue will not sustain plaintiff in his position that the matter is adjudicated. Lumber Co. v. Nickey, 85 Mo. App. 270; Nelson v. Barnett, 123 Mo. 570; Clemens v. Murphy, 40 Mo. 121; Garland v. Smith, 164 Mo. 1; Barkhoefer v. Barkhoefer, 93 Mo. App. 373. (4) *Res adjudicata* must be pleaded affirmatively. The reply does not tender this issue. Neither was there any evidence to sustain the allegation. Beattie Mfg. Co. v. Gerardi, 166 Mo. 142.

FOX, J.—This cause is now in this court upon an appeal from a judgment in an action in ejectment begun in the circuit court of Greene county, Missouri, against B. F. Meadows, the tenant in possession. Sue I. B. O'Day, claimed to be the owner, was made party defendant on her own motion. The judgment in the Greene Circuit Court was for the defendants. The petition in which the cause of action is stated is in the usual and ordinary form of petition in actions of eject-

ment, and the land sought to be recovered is the southwest quarter of northeast quarter and the southeast quarter of northwest quarter, all in section 27, of township 29, range 22, said premises being also known as blocks 2 and 3, in Oklahoma addition to the city of Springfield. The answer of Meadows is in the ordinary form, admitting possession, but denying each and every other allegation.

To fully appreciate the questions in controversy in this proceeding and in order to fully comprehend the basis of the relief granted the defendant, Sue I. B. O'Day, by the decree and judgment in this cause, it is necessary to reproduce her answer, which is as follows:

."Now comes defendant Sue I. B. O'Day and for answer to plaintiff's petition admits that she is in possession by tenant of the land described therein, but denies each and every other allegation in said petition contained. Wherefore she prays for judgment.

"And further answering, and for a separate, distinct and equitable defense, defendant Sue I. B. O'Day says that on the 5th day of March, 1900, the plaintiff and one John O'Day were husband and wife, and had sustained said relation for a long time prior thereto; that on said day the said plaintiff and her said husband agreed in writting upon a marriage settlement of all property rights, by the terms of which, in consideration of the conveyance of certain properties therein described, including the land described in petition, and in further consideration of other things of value to said plaintiff paid, she agreed to relinquish all her marital rights in the estate of the said John O'Day, and in furtherance of said agreement the said plaintiff and her said husband executed the following instrument:

" 'This agreement, made and entered into this 5th day of March, 1900, by and between John O'Day, of the city of Springfield, Missouri, party of the first part, and Clymena Alice O'Day, his wife, party of the second

part, witnesseth; that said parties for the purpose of adjusting and settling all questions as to rights of property between them arising out of every matter whatsoever agree as follows. First, the party of the first part agrees to assign and deliver to said party of the second part certificates for the full paid capital stock of the Oriel Realty and Construction Company, the owner of the Oriel Building, on the corner of Sixth and Locust streets, Saint Louis, Missouri, amounting to two hundred thousand dollars; also to convey or cause to be conveyed by proper deed or deeds the absolute and fee simple title to the south half of a tract of land in Greene county, Missouri, adjoining the town of Springfield, Missouri, known as Park Place, and being in sections 26 and 27, township 29, range 22, and the entire tract being composed of the following described parcels of land, to-wit: The Hugh Schultz land, the land formerly of Maggie C. Baker and husband, the Graham Young tract, the H. C. Young tract, the Jarboe tract and the M. C. Vinton tract, said south half of said tract of land to be conveyed free and clear of encumbrance; also to convey by proper instrument in writing a life estate to said party of the second part in the north half of said tract of land above described, known as Park Place, so long as said party of the second part shall live; provided that if the party of the first part shall die before the party of the second part the fee simple estate in said north half of aforesaid tract of land to remain in any event in the party of the first part. The said party of the first part further agrees and obligates himself to erect or cause to be erected on said south half of said Park Place above described a homestead which shall cost not less than twelve thousand dollars nor more than fifteen thousand dollars, the said home building to be commenced at once and the construction thereof to be completed as rapidly as practicable. The party of the second part hereto, in consideration of the covenants and agreements herein con-

tained to be kept and performed by the party of the first part, accepts the property herein provided to be transferred and conveyed to her in full satisfaction of all claims of any kind, whether for dower interest, alimony or maintenance, which she may have against the party of the first part and waives any claim whatever to any share or interest in any other property, real or personal, which now belongs to the party of the first part or in which he has any interest, as well as to any property or interest in property hereafter acquired by him.   It is agreed and understood that proper deeds and instruments carrying out this agreement are to be executed and delivered between the parties  hereto. Witness the hands and seals of said parties of the first part and second part this 5th day of March, 1900.

" 'John O'Day,       (Seal.)<br>" 'Clymena Alice O'Day.      (Seal.)'

"That in execution of said agreement, and for no other purpose and no other consideration, the said John O'Day, plaintiff herein, assigned said stock in the Oriel Realty and Construction Company to said plaintiff, and in execution of said agreement, and for no other purpose and no other consideration, the said John O'Day on March 6, 1900, executed and delivered to his son, A. C. O'Day, his certain instrument in writing, in which plaintiff herein joined, which instrument is in words and figures as follows:

" 'Know all men by these presents, that we, John O'Day and Clymena Alice O'Day, his wife, of the city of Springfield, in the county of Greene and State of Missouri, have granted, bargained and sold, and by these  presents do grant, bargain, sell and convey unto the said A. C. O'Day  the following described tracts and parcels of land, situate in said county of Greene and State of Missouri, that is to say, to-wit:  All of the south half and 20 acres along the south end of the north half of a body of land situate in sections 26 and 27, township 29, range 22 of said Greene county, Mis-

souri, known as Park Place, and which Park Place or body of land is made up of several tracts or parcels of land acquired by said John O'Day by the following deeds, to-wit: Deed from Hugh G. Schultz and Emily V. Schultz, his wife, dated March 13, 1891, recorded in book 104, at page 167; deed from William G. Goodwin, dated April 27th, 1896, recorded in book 150, at page 401; deed from Maggie C. Baker and James Baker, her husband, dated January 11th, 1896, recorded in book 153, at page 215; deed from Charles Graham Young, dated August 5th, 1890, recorded in book 99, at page 82. (all of said books being of record in the office of recorder of deeds of Greene county, Missouri); deed from G. R. Young, dated September 25th, 1890, recorded March 10th, 1891; also the tract of land conveyed to said John O'Day by deed from Henry C. Young, being the south half of the south half of the southwest quarter of the northwest quarter of the southwest quarter except 8 acres off of the northwest quarter of the same section, township and range, and which body of land above described constitutes what is designated by me as Park Place, and which contains between three and four hundred acres; to have and to hold the same, with all the rights, privileges and appurtenances thereto belonging, or in anywise appertaining unto the said A. C. O'Day, his heirs and assigns forever. And said John O'Day and Clymena Alice O'Day, his wife, in consideration of the sum of one dollar to them paid by said A. C. O'Day, hereby remise, sell and quit-claim to said A. C. O'Day an estate in all the north half of said body of land hereinbefore described (except the twenty acres on the south end thereof hereinbefore conveyed), and also in that certain tract or parcel of land acquired by said John O'Day from M. C. Vinton by deed dated February 7th, 1898, which deed is recorded in book 165, at page 434, of the office of the recorder of deeds of Springfield, Greene county, Missouri, commencing upon the death of the said John O'Day

and continuing so long as said Clymena Alice O'Day shall live. To have and to hold the said last created estate to the said A. C. O'Day and to his assigns, heirs, executors and administrators during such period hereinbefore fixed. In witness whereof the said John O'Day and Clymena Alice O'Day have hereunto set their hands and seals this 6th day of March, 1900.

" 'JOHN O'DAY, (Seal.)

" 'CLYMENA ALICE O'DAY. (Seal.)'

"Which instrument was duly acknowledged before a notary public on said 6th day of March, 1900, and delivered to said A. C. O'Day, and the same was on said day duly filed for record and is recorded in book 179, at page 416, in the office of the recorder of deeds of Greene county, Missouri.

"That on the same day and in further execution of said written agreement between said John O'Day and his said wife, plaintiff herein, and for no other purpose than to effectuate said agreement, and upon no other consideration, the said A. C. O'Day executed and delivered to said plaintiff herein, who received and accepted the same at the time as a compliance with said agreement, the following described instrument in writing:

" 'Know all men by these presents, that I, A. C. O'Day, a single man, of the city of Springfield, in the county of Greene and State of Missouri, for and in consideration of the sum of ten thousand dollars, to me in hand paid by Clymena Alice O'Day, of the same place, the receipt of which is hereby acknowledged, have granted, bargained and sold, and by these presents do grant, bargain, sell and convey unto the said Clymena Alice O'Day the following described tracts or parcels of land situate in said county of Greene and State of Missouri, that is to say: All the south half and 20 acres along the south end of the north half of a body of land situate in sections 26 and 27 of township 29, range 22 of said Greene county, Missouri, known as Park Place, and which Park Place or body of

land is made up of several tracts of parcels of land acquired by said John O'Day by the following deeds, towit: Deed from Hugh G. Schultz and Emily Schultz, his wife, dated March 13th, 1891, recorded in book 104, at page 167; deed from Wm. G. Goodin, dated April 27th, 1896; recorded in book 150, at page 401; deed from Maggie C. Baker and James Baker, her husband, dated January 11th, 1896, recorded in book 153, at page 215; deed from Charles Graham Young, dated August 5th, 1890, recorded in book 99, at page 82 (all of said books being books of record in the office of the recorder of deeds of Greene county, Missouri); deed from G. R. Young, dated September 25th, 1890, recorded March 10th, 1891; also the tract of land conveyed to said John O'Day by deed from Henry C. Young, being the south half of the south half of the southwest quarter of the northwest quarter of the southwest quarter, except 8 acres off the northwest quarter of the same section, township and range, and which body of land above described constitutes what is designated by me as Park Place, and which contains between three and four hundred acres. To have and to hold the same by Clymena Alice O'Day, her heirs and assigns forever, with all the rights, privileges and appurtenances thereto belonging or in anywise appertaining unto the said Clymena Alice O'Day, her heirs and assigns forever. And the said A. C. O'Day, in consideration of one dollar to him in hand paid by said Clymena Alice O'Day, the receipt of which is hereby acknowledged, hereby remise, release and quitclaim unto the said Clymena Alice O'Day an estate in all the north half of said body of land hereinbefore described (except the twenty acres on the south end thereof hereinbefore conveyed), and also in that certain tract or parcel of land acquired by said John O'Day from M. C. Vinton by deed dated February 7th, 1898, which deed is recorded in book 165, at page 434, of the office of the recorder of deeds of Springfield, Greene county, Mis-

souri, commencing upon the death of the said John O'Day and continuing so long as said Clymena Alice O'Day shall live. To have and to hold said last created estate to the said Clymena Alice O'Day for and during her natural life after the death of said John O'Day. In witness hereof said A. C. O'Day has hereto set his hand and seal this 6th day of March, 1900.

"'A. C. O'DAY,    (Seal.)'

"Which instrument was duly acknowledged on said day before a notary public and delivered to plaintiff, who accepted the same, and the same was on said day filed for record and recorded in book 179, at page —, in Greene county, Missouri.

"Defendants say that whatever title or estate plaintiff acquired of, in and to the land described in her said petition was acquired under and by virtue of the said agreement between her and her said husband and two instruments hereinbefore described, made in execution of said agreement, and that she, plaintiff, has no other right, title, interest or estate or color thereof in any other manner or by any other means, and defendants say that the land described in plaintiff's petition is the same land known as the M. C. Vinton land, and is described in the said deeds from M. C. Vinton to John O'Day by the description set forth in the petition herein.

"Defendants state that said agreement and the instruments herein described made and delivered in furtherance of said agreement and to effectuate the same were not binding in law or equity on the said Clymena Alice O'Day on account of the marital relation then subsisting between her and said O'Day, and by reason of the premises she had the right to rescind and repudiate the same.

"And the defendants say that on the 31st day of August, 1900, she did repudiate said agreement and instruments made in execution of said agreement by then and there, in express contravention of the terms of said

agreement, that she would accept the same in full satis-
faction of all claims of any kind, whether for dower
interest, alimony or maintenance, file a bill for divorce
in the circuit court of Greene county, Missouri, praying
a divorce for certain causes therein alleged, and in
said bill claimed alimony out of the estate of said John
O'Day, as appears from the following allegation in
said petition contained, to-wit:

"'Plaintiff further states that the defendant is
seized and possessed of real and personal estate and
money of great value, but the exact value is to plaintiff
unknown. Wherefore plaintiff prays to be divorced
from the bonds of matrimony, contracted as aforesaid
with defendant; that the court will adjudge to her, sup-
port and maintenance out of the property of said de-
fendant as the nature of the cause and the circum-
stances of the parties may require, and that the court
will make such further orders and judgments from time
to time touching the premises as may be meet and
proper.'

"Defendant further says that on the trial of said
cause judgment was rendered for said plaintiff, and
other and different property than that described in said
article of settlement and said instruments made to
effectuate the same, and by different limitations were
set aside, assigned, transferred, conveyed and ordered
to be so set aside, assigned, transferred and
conveyed to this plaintiff, but the property described in
plaintiff's petition was not set aside to or ordered to be
conveyed to said plaintiff, but was expressly excepted
and reserved from the said decree, all of which is in
words as follows:

"'And it is further ordered, adjudged and decreed
by the court that the defendant pay to the plaintiff by
way of alimony the sum of twenty four thousand dol-
lars; also that he transfer and deliver to her certificates
for the full paid capital stock of the Oriel Realty and

Construction Company, being the owner of the Oriel Building on the southeast corner of Sixth and Locust streets, in the city of St. Louis and State of Missouri, amounting to two hundred thousand dollars; also that he convey or cause to be conveyed by proper deed or deeds to her absolutely and in fee simple title to the following described real estate lying and being situated in the county of Greene, State of Missouri, free and clear from any and all liens or encumbrances of any kind whatsoever, save and except the taxes now due or to become due on said property for the year A. D. 1900 and thereafter, to-wit: The south half of the southeast quarter of the northeast quarter of section 27, except three acres in the northwest corner thereof heretofore sold to one Clark; also 25 acres off the south end of the west half of the northwest quarter of section 26; also the east half of the southeast quarter of section 27; also the west half of the southwest quarter of section 26, all the above described real estate lying and being situate in township 29, range 22, and containing all of the tract known as Park Place, save and except blocks two and three of Oklahoma addition. Also that defendant assign, transfer and deliver to the plaintiff all of the live stock, tools, implements, farm machinery, carriages, buggies, harness and all other vehicles now belonging to him, and also all the household and kitchen furniture, bric-a-brac, tableware, ornaments, library and other goods and personal property now on or about the aforesaid Park Place, as well as all household goods now in storage in the city of Springfield, or elsewhere and now or formerly used by said parties; said real and personal property when so delivered and conveyed to plaintiff by defendant to be in lieu of her right of dower in the defendant's real estate wherever situate and all personal property said defendant now possesses or may hereafter possess.'

"And defendants say that said decree and the orders of the court so made were fully complied with

by said John O'Day, and the property therein de-
scribed in satisfaction of said decree was at and before
the filing of this suit duly assigned, transferred, set
over and conveyed to plaintiff herein. And defendants ·
say that the land above excepted from the terms and
force of said decree, to-wit, blocks 2 and 3 of Oklahoma
addition to Springfield, Missouri, is the land described
in plaintiff's petition herein and is otherwise known as
the M. C. Vinton tract, and is known as southeast quar-
ter of the northwest quarter of section 27, township 29,
range 22.

"Defendants say that by reason of the premises
the interest, if any was acquired by said plaintiff in the
land in petition described, became in equity and good
conscience invested in the said John O'Day, and that
said suit for divorce and said decree for alimony in
equity avoided and was a rescission of said agreement
hereinbefore set out and of said instruments so exe-
cuted and delivered to effectuate said agreement, be-
cause the said agreement and instruments had no force
or effect in law or equity to bind the plaintiff herein ·
on account of her relationship to said O'Day, and be-
cause the filing of said divorce suit and the decree made
therein was on the part of the said plaintiff a rescission
of said agreement and instruments. And defendants
further say that under said agreement and said instru-
ments no legal or equitable estate passed to plaintiff
herein, but they had the effect only to cloud the title of
said John O'Day.

"Defendant further states that said John O'Day
departed this life on the —— day of ————, 1901,
and by reason of the premises died equitably and
legally seized of the fee in said land. And defendants
state that by his last will and testament, duly sub-
scribed and witnessed as required by law, and duly
proven and admitted to probate by and in the probate
court of Greene county, Missouri, he (the said John
O'Day) devised the said land in plaintiff's petition de-

scribed to this defendant, Sue I. B. O'Day, who is his widow, and she is now legally and equitably seized of the fee in said land, and is now in possession thereof, and has been in possession thereof continuously since the date of entry mentioned in plaintiff's petition, and admits that the reasonable rental value of said land is two hundred and fifty dollars.

"Defendant Sue I. B. O'Day says that by reason of the premises the said agreement between plaintiff herein and said John O'Day, and the instruments herein described from John O'Day and Clymena Alice O'Day to A. C. O'Day and from A. C. O'Day to plaintiff herein, are clouds upon the title of said defendant, Sue I. B. O'Day, who in law and in equity and good conscience is the absolute owner in fee of said land. But defendant states that she is remediless at law. Wherefore she prays that said agreement be cancelled, set aside and for naught held, and that said instrument from said plaintiff and John O'Day to said A. C. O'Day and said instrument from said A. C. O'Day to plaintiff herein be set aside, cancelled and for naught held, and that all rights, if any, acquired by said plaintiff thereunder, whether held by this court to be legal, equitable or colorable, be divested and that the same be vested in this defendant Sue I. B. O'Day. And she further prays for such other and further relief as to this court may seem proper, and for her costs herein expended."

To this answer plaintiff filed the following replication:

"Comes now the plaintiff, and for reply to the separate equitable defense of the defendant, Sue I. B. O'Day, herein, denies each and every allegation in said answer and defense contained except such allegations as are hereinafter expressly admitted to be true.

"Admits that on the 6th of March, 1900, John O'Day, deceased, and the plaintiff executed to the son of said John O'Day the instrument set out in said answer, and that said deed so set forth is a true and cor-

rect copy of said deed from John O'Day and plaintiff to said A. C. O'Day.

"Admits that on the same day the said A. C. O'Day executed to the plaintiff the deed set forth in said answer from said A. C. O'Day to plaintiff, and that both of said deeds were duly executed, delivered and recorded as set forth in said answer.

"Admits that defendants have been continuously in possession of the premises sued for since the date of the entry alleged in plaintiff's petition, and that the value of the rents and profits of said premises is two hundred and fifty dollars per annum, or twenty and ten-twelfths dollars per month.

"Admits that the premises sued for are the premises described in the Vinton deed referred to in the above mentioned deeds, and are also described as blocks two and three, Oklahoma addition, to the city of Springfield.

"Admits that after the execution of said deeds the plaintiff instituted a suit for divorce against the said John O'Day, and in said suit that she was awarded a decree of divorce from the defendant therein, and awarded alimony by the terms of said decree. Plaintiff states further that prior to said decree of divorce and award of alimony therein the plaintiff herein made claim to all the property which was awarded to her by said decree, and that her said claim was confirmed by said decree of alimony, and that by the said decree and the awards therein contained, all equities or alleged equities sought to be invoked by the defendants herein were adjudicated in favor of the plaintiff, and all property rights that were in issue or that could have been in issue were forever settled and determined.

"Wherefore the plaintiff prays that defendants be denied all equitable relief herein and that she have and recover judgment as hereinbefore prayed."

The cause was tried by the court without the aid of a jury and the evidence was substantially as follows:

It is admitted that John O'Day is the common source of title; that O'Day departed this life prior to August 9, 1901, the alleged date of disseizin. The plaintiff read in evidence the deed from John O'Day and Clymena Alice O'Day, his wife, to A. C. O'Day, dated March 6, 1900, which is fully set forth in the answer of Sue I. B. O'Day. Plaintiffs then offered in evidence a deed from A. C. O'Day to Clymena Alice O'Day (plaintiff herein) dated the same day, March 6, 1900, conveying the same land and the deed contained the same language as contained in deed to A. C. O'Day defining the estate conveyed. It was admitted that the premises described in the said two deeds and known as the Vinton tract and which passed by deed from M. C. Vinton to John O'Day, dated Feb. 7, 1898, and recorded in book 165 at page 434, are the same premises that are sued for herein and that said premises are also described as blocks two and three of Oklahoma addition to Springfield, Missouri. It was also admitted that the defendants are in the possession of the premises sued for and that they have been in the possession of the same since August 9, 1901, and it was further admitted that the rental value of the rents and profits of said premises is $250.00 per annum.

The plaintiff here rested her case.

The defendants then to sustain the issues on their behalf introduced evidence as follows:

It is admitted that the defendant Sue I. B. O'Day is the widow of John O'Day, deceased, who is admitted to be the common source of title. The defendants then offered in evidence the last will of John O'Day, deceased, which was admitted to have been duly executed and properly probated and which will amongst other devises purports to devise to the defendant Sue I. B. O'Day, in fee simple, the property in controversy — objection being made to the competency, relevancy, materiality of said testimony, and exception being saved to the action of the court in overruling said objection.

Defendant then offered in evidence an agreement between John O'Day and Clymena Alice O'Day, dated March 5th, 1900, which agreement is set out in the answer of defendants. The agreement as pleaded differs from the agreement read in evidence in this: That the agreement contains the following which was not set forth in the agreement pleaded: "The party of the first part further agrees to and does hereby sell, assign and transfer to the party of the second part the horses now on said Park Place, known as 'Elite,' 'Echo,' 'Juno,' 'Ben,' 'Lallah Rookh,' and 'Zephyr,' which together with their produce shall belong absolutely to the party of the second part; also one-half of all the cows, sheep and hogs on said Park Place. It is further agreed and understood that all the carriages, buggies and other vehicles belonging to the party of the first part, and also all the household and kitchen furniture, bric-a-brac, tableware, ornaments, library and other goods and personal property in and about said Park Place or which was heretofore used therein and thereupon shall be used and belong jointly to the parties of the first and second part so long as both shall live and on the death of either the survivor shall have absolute title to same." Defendants then offered in evidence a decree of divorce rendered on the 10th day of September, 1900, in favor of the plaintiff herein, Clymena Alice O'Day, against John O'Day, the substance of which decree is set out in the answer of defendant Sue I. B. O'Day. The defendants then offered in evidence, first, a deed from John O'Day to E. W. Banister, dated August 25, 1900, and, second, a deed from E. W. Banister to the plaintiff, Clymena Alice O'Day, dated September 15, 1900, both of which deeds were duly acknowledged and recorded. It is unnecessary to reproduce the contents of them here, but it will suffice to say that they were deeds transferring the property in compliance with an order of the court as set forth in the

decree for divorce. Defendants then offered in evidence the petition in the action for divorce wherein Clymena Alice O'Day was plaintiff and John O'Day was defendant. There is no necessity for reproducing the contents of that petition.

The cause being submitted upon the evidence as herein indicated, the court rendered and entered of record the following judgment and decree:

"Now at this day comes on this cause to be heard, both parties appearing in person and by attorney, and the court doth proceed by consent and agreement of the parties to a trial of this cause, and all and singular the premises being seen, heard and fully understood, the court doth find that the plaintiff and John O'Day were on the 6th day of March, 1900, husband and wife and had sustained such relations for a long time prior thereto. That on said day the plaintiff and the said husband entered into an agreement in writing by the terms of which said husband, John O'Day, agreed to convey unto said plaintiff certain real estate therein mentioned, and including an agreement to convey to plaintiff the land in petition described, during the natural life of said plaintiff; that pursuant to said agreement the said plaintiff and her said husband conveyed the land described in plaintiff's petition to one A. C. O'Day, to have and to hold to the said A. C. O'Day an estate therein commencing upon the death of the said John O'Day, and to continue during the life of said plaintiff; and that in further execution of said agreement and on the said day the said A. C. O'Day by his deed, duly acknowledged and delivered, conveyed all the real estate in said last deed described, including the land described in plaintiff's petition, to this plaintiff, and conveyed said land in plaintiff's petition described to the plaintiff herein, to have and to hold an estate therein commencing upon the death of the said John O'Day and continuing so long as plaintiff herein shall live. The court doth further find that plaintiff herein ac-

cepted and received said deed and conveyance at the time as a full execution of and compliance with said agreement, and accepted and received the same in full of all marital rights and claims in the estate of the said John O'Day, real and personal, including dower interest, alimony and maintenance, as in said agreement it was agreed she would. The court further finds that afterwards, in direct contravention of the terms of said agreement, and of the deeds executed pursuant thereto, she (the plaintiff) filed in the circuit court of Greene county, Missouri, her petition for divorce from the bonds of matrimony subsisting between plaintiff herein and said John O'Day, and in said petition in contravention of the terms of her said agreement, prayed the court to award her alimony in the estate of the said John O'Day. The court doth further find that upon the trial of said cause judgment was rendered for said plaintiff therein, and other and different property than in said deeds to plaintiff contained and described in said agreement (as well as some of the same property therein described), and by different limitations, was awarded to plaintiff herein as alimony and in full satisfaction of her martial rights in the estate of the said John O'Day. The court further finds that the property in plaintiff's petition described was by express terms excepted from said decree. And the court doth find that the bringing of said divorce suit, and the judgment and decree therein rendered, is an express repudiation and rescission on the part of the plaintiff herein of the said agreement and the deeds made pursuant thereto and in execution thereof. And the court doth further find that John O'Day in all matters complied with the conditions of said decree, assigned and transferred to plaintiff herein all the property and money in said decree specified, and conveyed by proper deeds to said plaintiff all of the real estate described in said decree, excepting, however, the land described in plaintiff's petition. The court doth further find that the

only interest claimed by said plaintiff in said lands is based upon said agreement and deeds made in execution thereof. And the court doth further find that John O'Day by his last will devised the land described in plaintiff's petition to the defendant, Sue I. B. O'Day.

"Wherefore, all and singular premises being seen, heard and fully understood, the court doth order, decree and adjudge that the said agreement so made and entered into by and between plaintiff herein and her then husband, John O'Day, be cancelled, set aside and for naught held; that the deed of Clymena Alice O'Day and her then husband, John O'Day, conveying the land described in plaintiff's petition to A. C. O'Day (which deed is recorded in the office of the recorder of deeds for Greene county, Missouri, in book 179, at page 416), be cancelled, set aside and for naught held; and that the deed of said A. C. O'Day, conveying the land described in plaintiff's petition to plaintiff herein, Clymena Alice O'Day (which deed is recorded in the office of the recorder of deeds for Greene county, Missouri, in book 179, at page 418), be cancelled, set aside and for naught held, and that all the right, title, interest and estate and color of title claimed or owned by the said Clymena Alice O'Day of, in and to the following land, to-wit, the southwest quarter of the northeast quarter and the southeast quarter of the northwest quarter of section 27, township 29, range 22, in Greene county, Missouri, also known and described as blocks 2 and 3 of Oklahoma addition to Springfield, Missouri, be and the same is hereby divested from and out of the said Clymena Alice O'Day, and that the full legal and equitable title thereto be and the same is hereby vested in fee in the defendant, Sue I. B. O'Day, and that defendants recover their costs herein from plaintiff, for which execution may issue."

Motions for new trial and in arrest of judgment were timely filed and by the court overruled. From this judgment plaintiff in proper time and form prose-

cuted her appeal to this court and the record is now before us for consideration.

### OPINION.

The record before us fully discloses the propositions upon which it is sought to maintain the judgment and decree rendered in this cause by the trial court.

1. It is insisted by respondent that the agreement between John O'Day and his wife, the plaintiff in this cause, was invalid and not binding on the wife according to the rules of the common law, and in fact that it was not a contract at all as it lacked mutuality. It is also insisted that this contract was voidable at the election of the plaintiff Clymena Alice O'Day, and some act on her part or acquiescence on her part after she became discovert was necessary before the agreement could be dignified as a contract.

2. It is insisted by respondents that the conveyance from John O'Day and wife to A. C. O'Day (being the deed upon which this plaintiff must base her right to recover), does not pass a legal title sufficient to maintain ejectment: First. Because the paper is testamentary in its nature. Second. It attempts by deed to create a freehold estate *in futuro,* that is, a contingent estate *per autre vie* without creating at the same time and by the same deed or instrument a particular estate to support it.

3. It is earnestly contended that the action of plaintiff for divorce in which she made claim to alimony, was a direct repudiation of the agreement between John O'Day and the plaintiff, and of the deeds made pursuant thereto, and that such conduct on her part operated as a rescission and cancellation of the deeds conveying the property in dispute to plaintiff.

We will treat the propositions in the order as above designated.

I.  Upon the first proposition, as to the validity of the contract between John O'Day and this plaintiff during coverture, it is sufficient to say that in view of the conclusion reached in the recent case of Rice, Stix & Co. v. Sally, 176 Mo. 107, that is no longer an open question in this State.  That case was decided by Court in Banc, and the conclusions reached upon the question involved in the first proposition, were fully concurred in by the entire court.  The question as to the validity of contracts between husband and wife is fully covered in that case.  All of the authorities in this State, as well as those treating of the subject in other jurisdictions, were discussed and fully reviewed, and the conclusion of the court upon the subject in hand was thus announced:  ''After a careful consideration we are of the opinion that the intention of our Legislature was to remove the disabilities under which a married woman labored at common law so as to permit her to contract and be contracted with, sue or be sued, and that the language used, *being entirely without exception,* is broad enough to permit her to contract with her husband, and that her contracts with him will be enforced at law, just as if she had contracted with third persons, and this we think is the weight of judicial opinion in other States where statutes no broader than ours have been construed.''  [Bank v. Hageluken, 165 Mo. 443.]

Following the doctrine as announced in that case it must be held that John O'Day and the plaintiff in this case, during coverture as husband and wife, had the full power and authority under the statute, as to their property rights, to contract with each other, and such contract will be enforced at law just as if she had contracted with third persons.

II.  This brings us to the consideration of the second proposition, which in our opinion is the most serious question involved in this record.  Upon this proposition it is urged by counsel for respondent that the

deed from John O'Day and wife to A. C. O'Day (upon which plaintiff's right of recovery must be predicated), is testamentary in its nature and therefore insufficient to pass the legal title to the premises therein conveyed. The terms of the deed to which this challenge of sufficiency to pass the title is directed are as follows: "And said John O'Day and Clymena Alice O'Day, his wife, in consideration of the·sum of one dollar to them in hand paid by said A. C. O'Day, hereby remise, sell and quit-claim to said A. C. O'Day an estate in all the north half of said body of land hereinbefore described (except the 20 acres thereof on the south end thereof hereinbefore conveyed), and also in that certain tract or parcel of land acquired by said John O'Day from M. C. Vinton by deed dated February 7th, 1898, and which deed is recorded in book 165 at page 434 in the office of the recorder of deeds, Springfield, Greene county, Missouri, commencing upon the death of the said John O'Day and continuing so long as the said Clymena Alice O'Day shall live. To have and to hold said last created estate to the said A. C. O'Day and to his assigns, heirs, executors and administrators during said period hereinbefore fixed. In witness whereof the said John O'Day and Clymena Alice O'Day have hereunto set their hands and seals this 6th day of March, 1900."

The record discloses that this deed was executed by John O'Day and this plaintiff, who was at that time his wife, duly acknowledged and delivered to the grantee in that deed, A. C. O'Day, who caused the same to be placed of record, and that subsequently A. C. O'Day, in substantially the same terms, conveyed the property in dispute to this plaintiff, which deed was duly and properly acknowledged before a notary public and duly recorded in the recorder's office of Greene county, Missouri.

It is apparent from the terms of this deed that John O'Day intended and undertook to carve out of the land embraced in that deed a life estate, that is, an es-

tate to continue so long as his wife, this plaintiff, should live, which, in our opinion, under the laws of this State he had the right to do.

It is ably argued by counsel for respondents that this instrument was simply testamentary in its nature and was not in fact a deed, and that no rights vested in plaintiff until after the death of John O'Day; hence the instrument amounted to nothing more than a will and was insufficient to pass such legal title as would maintain ejectment.

The grantor and grantee in this deed were capable of contracting, and the terms used were those usually employed in a quitclaim deed, stating that "in consideration . . . . we hereby remise, sell and quit-claim to said A. C. O'Day an estate" in the land in controversy, coupled with the designation of the time when the possession and enjoyment of such estate should commence, which was "upon the death of the said John O'Day and continuing so long as the said Clymena Alice O'Day shall live." Then follows the concluding clause of that instrument, which fully recognizes that the deed was operative and effective upon its execution and delivery, then and there fixing the rights of the grantee in respect to such property, and that an estate had been created by the terms of the instrument, which says: "To have and to hold said last created estate to the said A. C. O'Day and to his assigns, heirs, executors and administrators during said period hereinbefore fixed." The insistence of counsel for respondents that this deed was testamentary in its nature, leads us to the inquiry as to what are the essential characteristics of such instruments. The marks of an instrument testamentary in its character are nowhere more clearly stated than in Nichols v. Emery, 109 Cal. l. c. 329, where it was said: "The essential characteristic of an instrument testamentary in its nature is, that it operates only upon and by reason of the death of the maker. Up to that time it is ambulatory. By its execution the maker

has parted with no rights and divested himself of no modicum of his estate, and *per contra* no rights have accrued to and no estate has vested in any other person. The death of the maker establishes for the first time the character of the instrument. It at once ceases to be ambulatory, it acquires a fixed status and operates as a conveyance of title. Its admission to probate is merely a judicial declaration of that status.'' In that same case it was expressly pointed out that it was important to note the distinction between the interest transferred and the enjoyment of that interest. As in the case at bar, the distinction must be kept in mind between the creation and conveyance of the estate and the commencement of the possession and enjoyment of that estate. Another mark of distinction between wills and instruments testamentary in their character and deeds formally executed is, that in the former the grantor may at any time prior to his death revoke the provisions of his will or an instrument conveying property which is testamentary in its character. In the latter, where the deed is formally executed and delivered by parties capable of contracting, and a present fixed right of future enjoyment is created, there is no power in the grantor prior to his death to revoke such deed. Take the deeds in this case from John O'Day and wife to A. C. O'Day and from A. C. O'Day to the plaintiff, it certainly will not be seriously contended that after the execution and delivery of those deeds John O'Day had the power, prior to his death, to revoke or in any way lessen the force, vitality, intent and purpose of the provisions of such deeds. They became effective upon their execution and delivery, and the rights of the grantees in such deeds were fixed at that time. The tendency of modern decisions is to uphold conveyances when not clearly repugnant to some well-defined rules of law. [2 Devlin on Deeds, sec. 855.] These deeds now in judgment before us vested an estate in the grantees at the time of their execution and

delivery; and, as was said in Tindall v. Tindall, 167 Mo. l. c. 225, "the law favors vested estates, and the rule is that estates shall be held to vest at the earliest possible period unless a contrary intention is clearly manifested in the grant. [Doe v. Considine, 6 Wall. 458; Amos v. Amos, 117 Ind. 19.]"

The law is nowhere more clearly stated as to when an estate is vested than by Chancelor Kent. [4 Kent's Com. (14 Ed.), p. 202.] It is thus announced: "An estate is vested when there is an immediate right of present enjoyment, or a present fixed right of future enjoyment."

It is clear by the execution and delivery of the deeds now in hand in which it is recited by the grantors that "we hereby remise, sell and quit-claim an estate" in the premises described, a life estate was created and the possession and enjoyment of that estate, by the other terms in the deeds, were simply postponed until the death of John O'Day. A present fixed right of future enjoyment of that estate was beyond dispute created by the terms of the deed in controversy.

In Abbott v. Holway, 72 Maine l. c. 304, it was contended that the instrument in judgment in that case was not a conveyance because it was contrary to public policy and an attempt to evade the statute regulating the making and execution of wills. BARROWS, J., responding to that contention, said: "But the instrument was duly executed by the defendant's testator, a man capable of contracting, and having an absolute power of disposition over his homestead farm, subject only to the rights of his existing creditors. It was duly recorded so that all the world might know what disposition he had made of a certain interest in it, and what was left in himself. If operative at all, it operated differently from a will. A will is ambulatory, revocable. Whatever passed to the wife by this instrument became irrevocably hers."

The mere fact that provisions in a deed may post-

pone the enjoyment of the estate created, should not be made the basis of a rule of construction that such instruments are testamentary in their character. Upon this subject the remarks of Chief Justice STONE, in Sharp v. Hall, 86 Ala. 110, are very appropriate. He said: "There are few, if any questions, less clearly defined in the law-books, than an intelligible, uniform test, by which to determine when a given paper is a deed, and when it is a will. Deeds, once executed, are irrevocable, unless such power is reserved in the instrument. Wills are always revocable, so long as the testator lives, and retains testamentary capacity. Deeds take effect by delivery, and are operative and binding during the life of the grantor. Wills are ambulatory during the life of the testator, and have no effect until his death. Out of this has grown one of the tests of testamentary purpose, namely, that its operation shall be posthumous. If this distinction were carried into uniform, complete effect, and if it were invariably ruled that instruments which confer no actual use, possession, enjoyment, or usufruct on the donee or grantee, during the life of the maker, are always wills, and never deeds, this would seem to be a simple rule, and easy of application. The corollary would also appear to result naturally and necessarily, that if the instrument, during the lifetime of the maker, secured to the grantee any actual use, possession, enjoyment or usufruct of the property, this would stamp it irrefutably as a deed. The authorities, however, will not permit us to declare such inflexible rule."

The distinction between wills and instruments testamentary in their character and deeds is very clearly drawn in McDaniel v. Johns, 45 Miss. 1. c. 641-42. It was there said that "a will is an instrument by which a person makes a disposition of his property to take effect after his decease, and which is, in its own nature, ambulatory and revocable during his life. It is this ambulatory quality which forms the characteristic of

wills; for, though a disposition by deed may postpone the possession or enjoyment, or even the vesting, until the death of the disposing party, yet the postponement is in such case produced by the express terms, and does not result from the nature of the instrument.''

We have critically analyzed the provisions of the deeds involved in this controversy and we are unable to discover any design or purpose on the part of the grantors to make them testamentary in their character, but on the other hand, the terms employed in those deeds evince, in the clearest and most explicit manner known to the forms of conveyancing, an intention to convey and not to devise. As was said by Broom in his Maxims (8 Ed.), star page 540, in translating a fundamental maxim of the law, "a liberal construction should be placed upon written instruments, so as to uphold them, if possible, and carry into effect the intention of the parties.''

The terms of the deeds relied upon by plaintiff to support her title in this proceeding are very unlike the instrument under consideration in Murphy v. Gabbert, 166 Mo. 601, to which our attention has been specially directed. It is manifest from the terms of that instrument that it was testamentary in its character and was properly so held. It was expressly provided by that instrument that, "the intention of this instrument of writing is such that Mrs. Ann Ellison relinquishes her entire right at her death, then this deed is to immediately come into effect, but not until then.'' It is clear that the instrument involved in that case, by its own terms, was not to take effect or become operative until the death of the grantor. Unlike the deeds involved in this controversy, which clearly, by the terms employed in them, fixed the rights of the grantees in respect to the property conveyed, upon the execution and delivery of them.

Upon this proposition it must be held that these deeds were not instruments testamentary in their char-

acter, but were operative and effective in conveying an interest in real estate.

The second subdivision of respondents' contention upon this proposition is that it attempts by deed to create a freehold estate *in futuro,* that is, a contingent estate *per auter vie* without creating at the same time and by the same deed or instrument a particular estate to support it.   Upon this proposition we confess that if the rules of law which were applicable to ancient feudal tenures, and all the restrictive effects of such laws upon alienations of real property were in force and applicable to the conveyancing of real estate under the statutes of this State, the contention of respondents could well be maintained.   This insistence on the part of the respondents involves for the first time a construction of the last subdivision or sentence of section 4596, Revised Statutes 1899.   This section provides: "When an estate hath been or shall be, by any conveyance, limited in remainder to the son or daughter, or to the use of the son or daughter of any person to be begotten, such son or daughter born after the decease of his or her father shall take the estate in the same manner as if he or she had been born in the lifetime of the father, although no estate shall have been conveyed to support the contingent remainder after his death.   And hereafter an estate of freehold or of inheritance may be made to commence in future by deed, in like manner as by will."   While the last subdivision or sentence of that section, "and hereafter an estate of freehold or of inheritance may be made to commence in future by deed, in like manner as by will," is in the same section making provisions in respect to posthumous children, yet it is apparent that it has no application to the first subdivision of the section which treats and fully disposes of the subject of posthumous children.   The last sentence of that section of the statute is useless and meaningless unless it be construed as changing the rules applicable to conveyances at com-

mon law, and in our opinion, the intention of the Legislature, by the insertion of that independent provision, providing that ''an estate of freehold or of inheritance may be made to commence in future by deed, in like manner as by will'' was for the specific purpose, as had been done in other states, notably Virginia and Indiana, to change the common law rules applicable to conveyances.  Dr. Minor in his Institutes, vol. 2, p. 370, in treating of this subject, said: ''At common law a freehold estate in lands to commence *in futuro* cannot be created, because, as we have seen, it cannot arise without *livery of seisin*, which must in its nature take effect immediately, or not at all; and if it should take effect so far as to pass the freehold out of the grantor, the same would be vested in nobody, but would be in abeyance, contrary to the established policy of the law (3 Th. Co. Lit. 102, n [G] ; 2 Bl. Com. 165-6) ; but in conveyances operating under the statutes above-named (supra i. e.), which pass the freehold without *livery of seisin*, this reason does not apply.  The freehold remains in the grantor or in the devisor's heirs, until the time appointed for it to take effect, and then passes to the grantee or devisee, by the force and effect of the several statutes.  The future limitation may be either appointed to arise upon a contingency (e. g. a devise to the heirs of A, who is yet living, or to the unborn son of A), or at a period certain (e. g. a grant to A for life, or in fee, to commence five years from the date) ; but in either case, in order to constitute an executory limitation, there must be no preceding particular estate to give it effect as a remainder, for the rule admits of no exception, being indeed, as we have seen, of the essence of the definition, that no estate can be construed to be an executory limitation which is capable of taking effect as a remainder.   [Fearne's Rem. 395 et seq., n (d) ; Id. 382, & n [a] ; Id. 394 & seq.; 1 Th. Co. Lit. 646, n. [C].] In Virginia it is further provided by statute that any estate may be made to commence *in futuro*

by deed, in like manner as by will, which either is without meaning or applies to conveyances at common law, as feoffment and the like; and in the latter aspect makes very radical innovations upon the common law doctrine of conveyances. [V. C. 1873, c. 112, sec. 5.]   In devises such limitations are not otherwise known than as executory devises, but when they occur in conveyances operating under the statute of uses, they are called springing uses.   No name has yet been bestowed on them under the statute of grants (8 & 9 Vict.), but they might very well be denominated springing grants, and such limitations in general might be called springing limitations."

Section 900, Revised Statutes 1899, upon the subject of conveyances, provides that "conveyances of lands, or of any estate or interest therein, may be made by deed executed by any person having authority to convey the same, or by his agent or attorney, and acknowledged and recorded as herein directed, without any other act or ceremony whatever."

Under a similar statute in respect to conveying real estate, the Supreme Court of Maine, in Abbott v. Holway, supra, held that even in the absence of a statute, with provisions similar to section 4596, a conveyance purporting to convey a freehold estate to commence at a future date, should be upheld.   The decision in that case is such a practical and common-sense application of the rule which should govern the conveying of real estate under our system of government and method of conveyancing, that we will be pardoned for reproducing the full discussion applicable to the subject.   In treating of the question involved in that case, which is similar to the one in the case at bar, BARROWS, J., speaking for that court, thus discussed the question and announced the conclusions of that court:

"Our statutes (R. S. c. 73, sec. 1) provide that 'a person owning real estate and having a right of entry into it, whether seized of it or not, may convey it, or all

of his interest in it, by a deed to be acknowledged and recorded as hereinafter provided.' Detailed regulations as to the mode of execution and as to the force and effect of conveyances thus made and recorded, follow this general provision in some thirty sections, more or less. Can it be doubted that under such statutes the owner of real estate can convey in the manner prescribed, such part or portion of his estate as he and his grantee may agree, subject only to those restrictions which the law imposes as required by public policy, but relieved from the technical doctrine which arose out of ancient feudal tenures, and all the restrictive effect which they had upon alienations? Why prevent the owner in fee simple from agreeing with his grantee (and setting forth that agreement in his conveyances) as to the time when, and the conditions upon which, the instrument shall be operative to transfer the estate from one to the other?

"In substance our law now says to a party having such an interest in real estate as is mentioned in R. S., c. 73, you may convey that interest or any part thereof in the manner herein prescribed with such limitations as you see fit, provided you violate no rule of public policy, and place what you do on record so that you may see how the ownership stands.

"In the discussion of the effect of the statute of uses and of our own statutes regulating conveyances of real estate in Wyman v. Brown, 50 Maine 139 (a leading case upon the validity of conveyances under which the grantee's right of possession was to accrue not upon delivery of the deed but at some future day), WALTON, J., remarks: 'We are also of the opinion that effect may be given to such deeds by force of our own statutes, independently of the statute of uses. Our deeds are not framed to convey a use merely, relying upon the statute to annex the legal title to the use. They purport to convey the land itself, and being duly acknowledged and recorded, as our statutes require, op-

erate more like feoffments than like conveyances under the statute of uses.' In this connection he quotes Oliver's Conveyancing, touching the operation and properties of our common warranty deed to the effect that in the transfer authorized by the statute in this mode, 'the land itself is conveyed as in a feoffment except that livery of seizin is dispensed with upon complying with the requisitions of the statute, acknowledging and recording substituted instead of it.'

"And he concludes that deeds. executed in accordance with the provisions of our statutes and deriving their validity therefrom may be upheld thereby, as well as under the statute of uses, notwithstanding they purport to convey freeholds to commence at a future day.

"In other words the mere technicalities of ancient law are dispensed with upon compliance with statute requirements. The acknowledgment and recording are accepted in place of livery of seizin, and it is competent to fix such time in the future as the parties may agree upon as the time when the estate of the grantee shall commence. No more necessity for limiting one estate upon another, or for having an estate (of some sort) pass immediately to the grantee in opposition to the expressed intention of the parties.

"The feoffment is to be regarded as taking place, and the livery of seizin as occurring at the time fixed in the instrument, and the acknowledgment and recording are to be considered as giving the necessary publicity which was sought in the ancient ceremony."

Upon the provisions of section 900, Revised Statutes 1899, in respect to conveyancing of real estate, supplemented by the provisions of section 4596, supra, we are of the opinion that the deeds involved in this controversy conveying the property in dispute, were valid and conveyed a sufficient legal title upon which to predicate an action in ejectment.

194 Sup—40

III. This leads us to the final contention of respondents, that is, that the bringing of the action for divorce, claiming alimony therein and obtaining a judgment for such alimony, was a direct repudiation of the original agreement between John O'Day and this plaintiff, and operated as a rescission and cancellation of the deeds by John O'Day and wife to A. C. O'Day and by A. C. O'Day to this plaintiff, made in pursuance of such original agreement. To this insistence of respondents we are unable to give our assent. The deeds which resulted in the conveyance of a life estate to this plaintiff at the time of the institution of the divorce suit, were fully executed, acknowledged and delivered, and the original agreement between John O'Day and the plaintiff, who was then his wife, did not by the terms of said agreement make the force and validity of such conveyances dependent upon her subsequent action in bringing a suit for divorce and claiming alimony. It may be conceded for the purposes of this case that, having accepted the conveyances made in pursuance of the original agreement in lieu of dower, alimony, etc., the claim for alimony in her divorce suit and the obtaining of judgment therefor, was a wrongful act, yet we are unable to conceive upon what principle of law the mere commission of that wrongful act is to operate as a rescission or cancellation of solemn conveyances fully executed and delivered. To illustrate, if A should execute and deliver a deed to B in which certain land was conveyed and an independent agreement should have been previously made, the terms of which would recite that this conveyance was made in lieu of ten head of horses, which were to be delivered by A to B, and subsequent to the execution and delivery of the deed, B should bring suit against A to recover the horses, would it be seriously contended that the bringing of that suit and even the recovery of the horses would operate as a rescission or cancellation of the deed executed to B? Certainly not; for A in that instance had his day in

court in the suit to recover the horses where he could make his defense that there was no right of recovery for the reason that this deed which had been executed and delivered under a solemn agreement, was in lieu of those horses and therefore there could be no right of recovery. If he should fail to make that defense the loss is his and the responsibility for such loss must be attributable to his failure to make his defense at the proper time. So it is in the case at bar. Mr. O'Day fully executed and delivered the deed to A. C. O'Day, and concede for the purposes of this case that it was made in pursuance of an original agreement between him and his wife and in lieu of alimony, yet when plaintiff in this case brought suit for divorce, claiming alimony, Mr. O'Day was served with a copy of the petition; he knew what her claim was; he had his day in court, and if he had previous to that time satisfied her by conveyances, then beyond any sort of question it was his plain duty to make it known to the court in that proceeding, and thereby prevent a recovery of judgment for such alimony.

The record discloses that to the action for divorce he made no defense whatever to her claim for alimony; he simply filed a general denial (except as to the marriage), and that general denial of course went only to the causes alleged in the petition as ground for divorce and the amount of property of which it was alleged he was seized. He made no objections to the decree of divorce or to the judgment for alimony, allowing it to stand unappealed from. Even in the action for divorce the defense that the mere bringing of an action claiming alimony was in violation of an original agreement, could not have been made the basis of a cancellation or rescission of a fully executed contract. While the court having jurisdiction of the parties could have proceeded to have adjusted their property rights, yet it by no means would have undertaken to have settled by a decree that a fully executed conveyance

should be cancelled or rescinded upon the basis that the plaintiff had wrongfully claimed alimony; however, it is unnecessary to pursue this subject further. He made no such defense after being fully notified as to the nature of the cause of action. He was fully cognizant of the original agreement; must have known he was the grantor in a deed of conveyance that had been fully executed and delivered, and if there were to be any steps taken in the direction of rescinding or cancelling his conveyances that was a matter to which he should have called the attention of the court by an appropriate pleading, and having had his day in court and failing to do so, it is now too late for those succeeding to his rights to ask the court to rescind or cancel such conveyances.

A great deal is said in the briefs of both counsel for appellant and respondents upon the subject of *res adjudicata*. We are of the opinion that the doctrine of *res adjudicata* has very little to do with this case. It is contended by respondents that plaintiff in her reply failed to properly plead *res adjudicata*. Under the pleadings in this case there was no necessity for any such pleading. The answer of Sue I. B. O'Day simply charged that the institution of the action for divorce and the recovery of judgment for alimony was a repudiation of the original agreement, and operated as a rescission or cancellation of the deeds of conveyances. The reply of plaintiff denied this allegation and that denial put in issue the allegations of the answer. As to whether or not the institution of the divorce suit was a repudiation of the original contract and a rescission or cancellation of the deeds of conveyance, were not as a matter of fact adjudicated in the divorce proceeding; however, it is clear that was the place for the settlement of that question, and the failure of the defendant John O'Day in that proceeding to avail himself of all defenses that he was called upon by the nature of the proceeding to make, must be treated under the law as

equally effective in settling that question adversely to him as though the same result thad been reached after making a complete defense and a thorough adjudication of the subject.

The answer of the defendant Sue I. B. O'Day in this cause does not proceed upon the theory that these conveyances vesting this life estate should be rescinded or cancelled by reason of any fraud or mistake, or that they had been rescinded or cancelled by any affirmative action of any court of competent jurisdiction, and it nowhere appears that the parties to these conveyances were consenting to any cancellation or rescission of such instruments. If there is any presumption to be indulged from the divorce proceeding and the judgment rendered therein, and the conduct and action of all parties surrounding that transaction, it is that the validity of the conveyances assailed in this proceeding were fully recognized in the divorce proceeding. But there was not an utterance by either of the parties, nor an allegation in either the petition of the plaintiff or the answer of the defendant in that proceeding, in any way indicating that there was a contest as to the validity of the deeds which had been fully executed and delivered by the grantors prior to the action for divorce; but on the contrary, as before stated, the validity of such instruments was fully recognized.

The deeds offered in evidence by plaintiff conveyed to her a life estate and were sufficient to authorize a recovery of such estate in an action of ejectment. She was entitled to the possession of the land in controversy upon the death of John O'Day.

We have thus indicated our views upon the propositions involved in the record before us, and nothing remains to be done except to announce our conclusion, which is that the decree and judgment as rendered in this cause by the trial court was erroneous. There should have been a judgment for the plaintiff. It is, therefore, ordered that the judgment in this cause be

reversed and the cause remanded with directions to the trial court to ascertain the amount of damages sustained by plaintiff by reason of the withholding of the premises and monthly value of the rents and profits, and render judgment for the plaintiff for the recovery of the possession of the premises, as well as the damage, rents and profits ascertained.

All concur.